UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE NORTH RIVER INSURANCE<br>COMPANY | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| O&G INDUSTRIES, INC. | : | |
| KEYSTONE CONSTRUCTION AND | : | |
| MAINTENANCE SERVICES, INC. | : | APRIL 24, 2013 |

## COMPLAINT FOR DECLARATORY JUDGMENT

### NATURE OF ACTION

1.      This action for declaratory judgment is brought by The North River Insurance

Company ("North River") against Keystone Construction and Maintenance Services, Inc.

("Keystone") and O&G Industries, Inc. ("O&G") concerning a second layer excess insurance

policy no. 522-014226-9 (the "Policy") that North River issued to Keystone, for the policy

period October 9, 2009 to October 9, 2010.  North River seeks a declaration regarding the

parties' rights and obligations under the Policy.  More specifically, North River seeks a

declaration that the insured, Keystone, has materially breached (a) Condition G.3.c. by failing to

cooperate with North River in the investigation, settlement or defense of the claim or suit; (b)

Condition G.4. by making or authorizing an admission of liability, attempting to settle, incurring

any expense, making any payment other than first aid, or otherwise disposing of any claim or suit

without North River's written consent; and (c) Condition J. by failing to maintain underlying

insurance; and that, as a consequence thereof, the Policy is void and North River has no

obligations under the Policy.

2.      North River also brings an action against Keystone and O&G for unfair and

deceptive acts or practices under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat.

947671_1

§ 42-110b, by engaging in unfair or deceptive acts or practices in the conduct of any trade or commerce. More specifically, O&G and Keystone colluded in an effort to wrongfully exhaust underlying insurance.

## PARTIES

3.     North River is a New Jersey corporation with its principal place of business in Morristown, New Jersey.

4.     O&G is a Connecticut corporation with its principal place of business in Torrington, Connecticut.

5.     Keystone is a Massachusetts corporation with its principal place of business in Rowley, Massachusetts.

## JURISDICTION AND VENUE

6.     Jurisdiction over this matter is founded upon diversity of citizenship under 28 U.S.C. § 1332 based upon the facts as specifically alleged in paragraphs 3 through 5 above.

7.     The amount in controversy, exclusive of interest and costs, exceeds $75,000.

8.     Venue for this matter lies in the District of Connecticut under 28 U.S.C. § 1391(b)(2).

9.     This Court has the authority to issue a declaratory judgment regarding the parties' right and obligations under the Policy pursuant to 28 U.S.C. § 2201, *et seq.*

10.     An actual controversy of a justiciable nature exists between North River and Keystone and O&G regarding the coverage, or lack of coverage, under the Policy.

11.     This Court has personal jurisdiction over O&G because it is a resident of Connecticut and conducts regular and systematic business in Connecticut.

947671_1

12.     This Court has personal jurisdiction over Keystone because it conducts regular and systematic business in Connecticut.

## FACTUAL BACKGROUND

14.     The present action arises out of Keystone's demands that North River defend and indemnify it on account of bodily injury and property damage claims arising out of a February 7, 2010 natural gas explosion at the Kleen Energy Systems ("Kleen") power plant in Middletown, Connecticut.

15.     The defendant, O&G, was the general contractor for the Kleen Energy power plant project.

16.     Pursuant to the Master Contract between Kleen, as owner, and O&G, as Contractor, O&G was obligated to "fully perform all the Work including engineering and design, procurement, manufacture, delivery, Facility Site clearance, civil works, construction and erection, installation, training, Check-out, Start-up (including calibration, inspection and start-up operation), demonstration and testing of the Work, and provide all labor, equipment and materials, machinery, tools, transportation, construction fuels, utilities, administration and other services or items required to complete the Work, all on a lump sum fixed price, turnkey basis and otherwise in accordance with and subject to the terms and conditions of this Agreement, including without limitation the Scope of Work, and, subject to the terms and conditions of this Agreement, in compliance with all applicable Governmental Approvals, Applicable Law, and Prudent Utility Practices.  The work shall include any work which is necessary to satisfy the requirements of this Agreement or that is reasonably implied by this Agreement, or arises from any obligation of Contractor, and all work not mentioned in this Agreement but which may be

947671_1

reasonably inferred from this Agreement to be necessary for stability of the Work and Facility or

the completion of the Facility."

17.     Section 2.5 of the Master Contract required that "Contractor shall provide all

20.     O&G elected to obtain insurance through a CCIP, but did not obtain

Persons and Work."

18.     Section 12.1.5 of the Master Contract required that the Contractor shall maintain

umbrella liability insurance for damages because of bodily injury and property damage with

minimum limits of $100,000,000 each occurrence.

19.     Section 12.6 of the Master Contract states that the Contractor may provide all or

as associated Work. . . ."  Upon information and belief, the work performed by Keystone on

February 7, 2010 was being done pursuant to a separate work order.

23.     Keystone is insured under at least two towers of insurance.  The first tower is the

CCIP with limits of approximately $51,000,000.  The CCIP policies provide insurance coverage

related to claims arising out of the design and construction of the Kleen power plant.  The CCIP

policy provides coverage for the general contractor, O&G, and O&G's subcontractors including

Keystone.

24.     Keystone's second tower of insurance consists of a primary policy issued by ACE

American (Policy No. PMD G24651447 002) with limits of $1,000,000 per occurrence; a first

layer excess policy issued by Everest National Insurance Company ("Everest") (Policy

No. 71C8000223-091) with limits of $10,000,000 per occurrence; and a second layer excess

policy issued by North River with limits of $15,000,000 per occurrence.

25.     Following the February 7, 2010 explosion, over thirty (30) bodily injury lawsuits

were filed.  Six (6) of those bodily injury lawsuits were wrongful death claims.  The bodily

injury lawsuits were brought against the owner, Kleen; the general contractor, O&G; certain

subcontractors of O&G including Bluewater Energy Solutions, Inc. and Keystone (Bluewater

and Keystone were not named as defendants in all the lawsuits); and other participants in the

design and construction of the Kleen power plant including Sprague Energy Corp., Worley

Parsons Group, Siemans Energy, Inc., Algonquin Gas Transmission, LLC and Spectra Energy,

Inc.

26.     A dispute arose between a CCIP insurer and the insurers for the individual

contractors as to the order in which such towers should respond to the bodily injury claims.

947671_1

27.     Upon information and belief, O&G, Keystone and ACE took the position that the CCIP insurers were obligated to defend and/or indemnify their insureds before the insureds' personal towers of coverage attached.

28.     The CCIP tower of insurance has not yet been exhausted.

29.     In December 2011, O&G filed a Demand for Arbitration with the American Arbitration Association naming Keystone as the respondent seeking (a) reimbursement of delay damages O&G paid to Kleen ($44.6 million); (b) delay damages recoverable under the subcontract between O&G and Keystone in an amount to be proven; (c) all Explosion-related losses suffered by O&G not covered under property or liability insurance policies in an amount to be proven; (d) per-ad post-award/judgment interest; (e) arbitration costs; and (f) attorneys' fees (the "O&G Arbitration Claim").

30.     Upon information and belief, Keystone tendered the O&G Arbitration Claim to Everest demanding that Everest defend and indemnify it against those claims.

31.     On December 20, 2011, Keystone tendered the O&G Arbitration Claim to North River demanding that North River defend and indemnify it against those claims.

32.     On May 30, 2012, North River served a reservation of rights letter to Keystone addressing Keystone's demand for coverage.  A true and accurate copy of the May 30, 2012 reservation of rights letter is attached hereto marked Exhibit A.

33.     In the May 30, 2012 reservation of rights letter, North River informed Keystone that the North River policy does not include a defense obligation.  In fact, it is specifically excluded.

34.     Subsequent to North River's May 30, 2012 denial of an obligation to defend, Keystone has made repeated demands that North River defend it against the bodily injury claims and O&G Arbitration Claim, but has never articulated a factual or legal basis for its demand.

35.     In the May 30, 2012 reservation of rights letter, North River informed Keystone that "North River has no present duty to indemnify" because, *inter alia*, a duty to indemnify may arise under the North River policy only after all UNDERLYING INSURANCE has been exhausted. North River also informed Keystone that, it was North River's understanding that the aggregate limits of all UNDERLYING INSURANCE had not been so exhausted.

36.     The UNDERLYING INSURANCE has not been properly exhausted.

37.     In the May 30, 2012 reservation of rights letter, North River informed Keystone that Keystone had provided to North River with only the basic claims presented by O&G and the other claimants. The letter goes on to state:

> Accordingly, without having had the opportunity to examine the legal and factual basis of the claimants' causes of action, North River is not in a position to speak to whether an indemnity obligation may exist, after proper exhaustion of the Underlying Insurance. In order to more fully evaluate whether the North River policy provides indemnity coverage for the claims, we respectfully request that Keystone provide to us all documents and information in its possession concerning the legal and factual basis for the claims. North River also requests that Keystone direct ACE (or any other insurer providing Keystone a defense) to provide us with any work-up it has garnered in connection with its defense of the claims. North River is reserving its rights to disclaim.

38.     North River's May 30, 2012 reservation of rights letter also requested that Keystone provide to it information and documents:

947671_1

> At this point, Keystone has provided to North River with only the bare claims presented by the three claimants. Accordingly, without having had the opportunity to examine the legal and factual basis of the claimant's causes of action, North River is not in a position to speak to whether an indemnity obligation may exist, after proper exhaustion of the Underlying Insurance. In order to more fully evaluate whether the North River policy provides indemnity coverage for the claims, we respectfully request that Keystone provide to us all documents and information in its possession concerning the legal and factual basis for the claims. North River also requests that Keystone direct ACE (or any other insurer that is providing Keystone a defense) to provide us with any work-up it has garnered in connection with its defense of the claims. North River is reserving rights to disclaim coverage until it has an adequate opportunity to evaluate the claims.

39.     Keystone entered into a Settlement Agreement For ACE Policy Limits Concerning Disputes Relating To The Kleen Energy Construction Project (the "ACE Settlement Agreement") dated May 29, 2012. The parties to the ACE Settlement Agreement are ACE, Keystone and O&G. A true and accurate copy of the ACE Settlement Agreement is attached hereto marked Exhibit B.

40.     Pursuant to the ACE Settlement Agreement, ACE, on behalf of its policyholder, Keystone, paid $1 million to O&G.

41.     Pursuant to the ACE Settlement Agreement, Keystone and O&G released ACE for all claims that Keystone or O&G may have against ACE under the ACE policy arising out of the February 7, 2010 explosion and Keystone and O&G agreed that the payment fully exhausts the $1 million per occurrence limit.

42.     In the ACE Settlement Agreement, O&G released Keystone from liability for the attorneys' fees claim that was one element of damage in the O&G Arbitration Claim.

947671_1

43.     In the ACE Settlement Agreement, Keystone conceded that the ACE payment of $1 million to O&G did not resolve the O&G Arbitration Claim.

44.     The ACE Settlement Agreement provides that the Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Connecticut, without regard to principles of conflict of law.

45.     Upon information and belief, in conjunction with the ACE Settlement Agreement, (and notwithstanding a then-pending arbitration claim in excess of $44.6 million) O&G paid to Keystone a sum of money allegedly due to Keystone for construction services rendered on the Kleen Energy project.

46.     The Everest policy states that Keystone may "not at any time make or authorize an admission of liability or attempt to settle or otherwise dispose of any claim or suit without our written consent."

47.     Keystone entered into the ACE Settlement Agreement without first obtaining the written consent of Everest.

48.     The North River policy states that Keystone "shall not make or authorize an admission of liability, attempt to settle, incur any expense, make any payment other than for first aid, or otherwise dispose of any claim or suit without our written consent."

49.     Keystone entered into the ACE Settlement Agreement without first obtaining the written consent of North River.

50.     The Everest policy does not contain a duty to defend.

51.     The North River policy does not contain a duty to defend.

52.     Other than the CCIP primary policy (which had been exhausted prior to execution of the ACE Settlement Agreement), the only policy providing a defense to Keystone for the

947671_1

bodily injury and property damages claim arising out of the February 7, 2010 explosion is the ACE American policy.

53.     Keystone's participation in the ACE Settlement Agreement, including its agreement to release ACE American for all claims that Keystone may have against ACE American under the ACE policy arising out of the February 7, 2010 explosion and its agreement that the payment fully exhausts the $1 million per occurrence limit, has left Keystone without insurance coverage for defending the O&G Arbitration Claim or the remaining bodily injury cases.

54.     Keystone entered into the ACE Settlement Agreement, and released ACE American from any claims arising out of the February 7, 2010 explosion, knowing that Keystone had insufficient means to defend itself in the O&G Arbitration proceeding and the remaining bodily injury cases.

55.     Apparently prompted by North River's May 30, 2012 request to Keystone for all documents and information concerning the legal and factual basis for O&G's claims, by letter dated June 19, 2012, O&G provided to North River a five (5) page "Summary of O&G's Position With Respect to Keystone's Liability for the Kleen Energy Plant" and a three and a half (3 ½) page Affidavit of Richard J. Hall dated June 19, 2012.

56.     The Summary of O&G's Position With Respect to Keystone's Liability for the February 7, 2010 Explosion at the Kleen Energy Plant and the Affidavit of Richard J. Hall provide on insufficient basis to determine Keystone's liability, the extent of its liability or the extent to which that liability may be covered by the North River policy.

947671_1

57.     By letter dated June 27, 2012, North River requested that Keystone provide to it all documentation evidencing the ACE settlement referenced in paragraph 17 of the Affidavit of Richard J. Hall.

58.     Keystone has never responded to North River's June 27, 2012 request for all documentation evidencing the ACE settlement referenced in paragraph 17 of the Affidavit of Richard J. Hall.

59.     The very few documents that Keystone has provided to North River indicate that Keystone was not responsible for the February 7, 2010 explosion.

60.     In a letter dated April 6, 2011 from Keystone's counsel to the Office of the Solicitor, U.S. Department of Labor, Keystone represented that it did not participate in the decision to use natural gas to clean piping.  Rather, the decision to clean piping by means of gas blows was decided upon and directed by the owner, Kleen Energy, its general contractor, O&G, and Bluewater, their chosen commissioning and start-up expert.

61.     In Keystone's April 6, 2011 letter to the Office of the Solicitor, U.S. Department of Labor, Keystone also represented that O&G directed Keystone to provide craft labor support as directed by O&G's gas blow start-up and commissioning expert, Bluewater.

62.     In Keystone's April 6, 2011 letter to the Office of the Solicitor, U.S. Department of Labor, Keystone represented that the owner, Kleen, received several warnings from the Connecticut Gas Pipeline Safety Unit ("GPSU") to use a non-combustible gas (such as nitrogen) or compressed air to minimize the risk of unintended combustion and that Kleen rejected GPSU's recommendation.

947671_1

63.     The very few documents that Keystone has provided to North River concerning the cause of the February 7, 2010 gas explosion provide insufficient evidence upon which to justify a settlement of the O&G Arbitration Claim for a sum in excess of $37 million.

64.     By letter dated August 23, 2012, Keystone sent to North River an ultimatum stating that "[i]f North River is going to engage O&G in settlement discussions, Keystone needs North River to do so within the next 10 business days.  If North River does not do so, Keystone will have no choice but to settle the Arbitration Claims with O&G and assign its coverage claims to O&G."

65.     By letter dated August 31, 2012, North River responded to Keystone's ultimatum stating that North River will indemnify Keystone for all covered claims after proper exhaustion of all underlying insurance up to its coverage limits.

66.     In that same letter dated August 31, 2012, North River also informed Keystone that several issues must first be resolved prior to North River evaluating whether it would assume a position to addressing whether to negotiate a settlement of O&G's $44.6 million liquidated damages claim.

67.     First, North River informed Keystone that there must be proper exhaustion of the underlying insurance, which had not occurred, because:  (a) the CCIP tower of coverage had not been exhausted; and (b) the ACE policy had not been properly exhausted because Connecticut law does not recognize ACE's partial settlement of O&G's $44.6 million arbitration claim as proper exhaustion of ACE's $1 million policy limits, citing Aetna Life & Casualty Co. v. Gentile, 1995 WL 779102 (Conn. Super.).

68.     Second, North River informed Keystone that it was its understanding that, prior to ACE's partial settlement of the O&G claim, O&G owed monies to Keystone for services

Keystone performed on the Kleen Energy project and that O&G paid monies to Keystone at or about the time of the ACE partial settlement.  North River asked Keystone whether its understanding was correct and, if so, that Keystone provide all documents relating to monies owed to Keystone by O&G as of May 1, 2012 together with a list of all payments made by O&G to Keystone, or for Keystone's benefit, since May 1, 2012.

69.     Keystone has never responded to North River's request for documents and information relating to monies owed by O&G to Keystone or paid by O&G to Keystone since May 1, 2012.

70.     In the August 31, 2012 letter from North River to Keystone, North River also informed Keystone that with regard to Keystone's intention to settle the O&G arbitration claims and assign its coverage claims, Keystone had provided North River no details regarding the elements of the proposed settlement with O&G.

71.     Prior to Keystone's entering into a settlement with O&G concerning the arbitration claims, Keystone never provided to North River any proposed terms or conditions of the proposed settlement with O&G.

72.     Keystone never requested North River's consent to the proposed settlement with O&G.

73.     Keystone has not provided to North River the documentation evidencing settlement of the O&G Arbitration Claim.

74.     According to paragraph 26 of the Second Amended Complaint in the matter <u>O&G Industries, Inc. v. Everest National Insurance Company</u>, U.S. District Court for the District of Connecticut, Civil Action No. 3:12-cv-01687-AWT, Keystone and O&G settled O&G's remaining Arbitration claims for $37 million and 66% of any liability that is incurred by O&G

for the Pending Kleen Energy Claim, and Keystone assigned its rights under the Everest Policy to O&G for purposes of collecting part of the settlement amount.  Keystone also assigned to O&G its right to pursue extra-contractual remedies against Everest.

75.     After learning of the settlement between O&G and Keystone, North River requested that Keystone provide it with all documents concerning the negotiation and consummation of the settlement.

76.     By letter dated March 11, 2013, Keystone refused to provide its insurer with copies of the settlement documents.

77.     Upon information and belief, on or about March 15, 2013, O&G and Everest entered into a settlement agreement whereby in consideration of Everest's $10 million policy limits, O&G released Everest from any and all claims arising out of the February 7, 2010 explosion at the Kleen Energy power plant.

78.     On or about March 15, 2013, and related to the O&G and Everest settlement referred to above, Keystone released North River from all claims or rights arising out of or related to the arbitration commenced against Keystone by O&G and the settlement negotiated between Keystone and O&G in said arbitration.

**COUNT ONE (Declaration That Keystone Has Materially Breached Conditions, Section G.3.c. Of The North River Policy By Failing To "Cooperate With Us In The Investigation, Settlement Or Defense Of The Claim Or Suit. . . .")**

79.     North River incorporates herein by reference the allegations contained in paragraphs 1 through 78.

80.     The North River policy contains Conditions, G.3.c. which states:

>   3.      YOU and any other insured must:
>
>   >   \*     \*     \*
>
>   >   c.      Cooperate with US in the investigation, settlement or defense of the claim or suit;

81.     Keystone has materially breached Conditions, G.3.c. of the North River policy by:

>   a.      failing to provide to North River the documents and information relating to O&G's Arbitration Claims made against Keystone;
>
>   b.      failing to respond to North River's request that Keystone provide copies of any insurance policies in which Keystone is either a named insured or additional insured (other than the ACE, Everest, North River and CCIP policies);
>
>   c.      failing to provide to North River with copies of all documents evidencing the transaction described in paragraph 17 of the Affidavit of Richard J. Hall;
>
>   d.      failing to provide to North River copies of all communications involving ACE American, O&G and Keystone concerning the O&G Arbitration Claim, including ACE American's coverage position;
>
>   e.      refusing to provide North River with copies of the documents concerning and evidencing its settlement of the O&G Arbitration Claim;

      f.      entering into the ACE Settlement Agreement, without North River's consent, and thereby depriving Keystone and its excess insurers of ACE American's duty to defend;

      g.     entering into a settlement with O&G for the remaining portion of the arbitration claim, without requesting North River's consent and without having performed any discovery or putting up any defense of the O&G Arbitration Claim.

82.     Keystone's material breach of Conditions, G.3.c. has caused North River prejudice.

WHEREFORE, North River seeks a declaration:

     A.     That Keystone has materially breached Condition G.3.c. by failing to cooperate with North River in the investigation, settlement or defense of the claim or suit;

     B.     That Keystone's material breach of Condition G.3.c. voids North River's obligations under the Policy;

     C.     That North River does not have any further obligations under the Policy.

**COUNT TWO (Declaration That Keystone Has Materially Breached Condition G.4. Of The North River Policy By "Mak[ing] Or Authoriz[ing] An Admission Of Liability, Attempt[ing] To Settle, Incurr[ing] Any Expense, Mak[ing] Any Payment Other Than First Aid, Or Otherwise Disposing Of Any Claim Or Suit Without OUR Written Consent.")**

83.     North River incorporates herein by reference the allegations contained in paragraphs 1 through 82.

947671_1

84.   The North River excess policy contains Condition G.4. which states:

> 4.   YOU shall not make or authorize an
> admission of liability, attempt to settle, incur
> any expense, make any payment other than
> for first aid, or otherwise dispose of any
> claim or suit without OUR written consent."

85.   Keystone has materially breached Condition G.4. of the North River policy by:

   a.   entering into the ACE Settlement Agreement,
        without North River's consent, and thereby
        depriving Keystone and its excess insurers of ACE
        American's $1 million policy limits and its duty to
        defend; and

   b.   entering into a settlement with O&G, for the
        remaining portion of the arbitration claim without
        requesting North River's consent, and without
        having performed any discovery or put up any
        defense of the O&G Arbitration Claim.

86.   Keystone's material breach of ConditionG.4. has caused North River prejudice.

WHEREFORE, North River seeks a declaration:

   A.   That Keystone has materially breached Condition
        G.4. by making or authorizing an admission of
        liability, attempting to settle and disposing of a
        claim or suit without North River's written consent;

   B.   That Keystone's material breach of ConditionG.4.
        voids North River's obligations under the Policy;

   C.   That North River does not have any further
        obligations under the Policy.

   **COUNT THREE (Declaration That Keystone, Through Its
   Participation In Effecting The Purported Exhaustion Of The
   ACE American And Everest Policies, Has Breached
   Condition J. By Failing To Maintain Underlying Insurance).**

87.     North River incorporates herein by reference the allegations contained in paragraphs 1 through 86.

88.     The North River excess policy contains Condition J. which states:

> **J.     MAINTENANCE OF UNDERLYING INSURANCE**
>
> The policy or policies referred to in the Declarations and Schedule of UNDERLYING INSURANCE or renewals or replacements thereof not more restrictive in coverage shall be maintained in full effect during this policy period, except for any reduction in the aggregate limits solely by payment of claims and/or claims expense.
>
> If such UNDERLYING INSURANCE is not maintained in full effect by YOU, or if any limits of liability of UNDERLYING INSURANCE are:
>
> 1.     Less than as stated in the Schedule of UNDERLYING INSURANCE; or
>
> 2.     Unavailable to YOU due to bankruptcy or insolvency of an underlying insurer; or
>
> 3.     If there is any material change in the coverage of any UNDERLYING INSURANCE; then the insurance afforded by this policy shall apply in the same manner as if such UNDERLYING INSURANCE and limits of liability had been in effect, available, so maintained and unchanged.

89.     Keystone has materially breached Condition J. by:

a.     causing and/or facilitating ACE American's payment of $1 million toward payment of less than all of O&G's Arbitration Claim thereby purportedly exhausting ACE American's policy limits and terminating ACE American's obligation to defend Keystone;

b.     causing and/or facilitating Everest's payment of $10 million toward the remainder of O&G's arbitration claim thereby purportedly exhausting Everest's policy limits notwithstanding that Keystone and Everest possessed insufficient information from which to determine whether Keystone was liable to

O&G and, if so, for how much, and, if Keystone
was liable, whether such liability was covered by
the Everest policy.

90.     Keystone's material breach of Condition J. has caused North River prejudice.

WHEREFORE, North River seeks a declaration:

A.     That Keystone has failed to maintain underlying
insurance as required by Condition J. of the North
River excess policy.

B.     That the insurance afforded by the North River
policy shall apply in the same manner as if such
underlying insurance and limits of liability had been
in effect, available, so maintained and unchanged.

**COUNT FOUR (Declaration That Keystone And O&G Have
Committed Unfair Or Deceptive Acts Or Practices In Violation
Of CUTPA By Wrongfully Colluding To Direct Keystone's
Insurance Assets Under The ACE And Everest Policies To
O&G, Without Establishing Keystone's Liability To O&G Or
Coverage For O&G's Claims Against Keystone.**

91.     North River incorporates herein by reference the allegations contained in

paragraphs 1 through 90.

92.     While numerous bodily injury and wrongful death were pending against

Keystone, Keystone, O&G and ACE American entered into the ACE Settlement Agreement

whereby ACE paid to O&G its $1 million policy limits for a partial release of the O&G $44.6

million arbitration claim.  The $1 million payment was in consideration of release of O&G's

claim for attorneys' fees.

93.     While Connecticut law does not recognize the partial payment of a claim as

proper exhaustion of a policy, O&G and Keystone contractually released ACE from any further

obligations under the ACE policy, including defense obligations.

94.     Upon information and belief, related to the ACE settlement, O&G paid an undisclosed sum to Keystone even though O&G had a then-pending claim against Keystone for over $44.6 million.

95.     Keystone agreed to the ACE Settlement notwithstanding its knowledge that it would not have financial means to defend itself against the remainder of O&G's arbitration claims.

96.     O&G, Keystone and ACE entered into the ACE Settlement over the objections of Everest and North River and without their written consent.

97.     In or about November 2012, Keystone and O&G entered into a Consent Award of $37 million for the remainder of O&G's arbitration claim.

98.     Prior to agreeing to the Consent Award, Keystone did not provide to North River or Everest the terms of the Consent Award nor request their consent.

99.     Prior to agreeing to the Consent Award, Keystone took no depositions nor propounded any written discovery to O&G.

100.    Upon information and belief, in or about February, 2013, O&G and Everest entered into a settlement agreement whereby Everest paid to O&G its policy limit of $10 million in exchange for a release of all of O&G's claims in connection with the O&G Arbitration Claim and the Consent Award.

101.    O&G provided to Everest insufficient information from which to determine whether Keystone was liable to O&G and, if so, whether the claims were covered by the Everest policy.

102.    Keystone and O&G have committed unfair or deceptive acts or practices in violation of CUTPA by wrongfully colluding to direct Keystone's insurance assets under the

947671_1

ACE and Everest policies to O&G, without establishing the merits of O&G's claims or establishing that O&G's claims were covered by the ACE or Everest policies.

103.    Exhaustion of underlying insurance policies on claims that are not reasonably meritorious, or have not been shown to be reasonably meritorious, is immoral, unfair, against public policy and causes substantial injury to other businessmen as it causes economic harm to claimants who may have meritorious claims against the policyholder.  Exhaustion of underlying policies on claims that are not reasonably meritorious, or have been shown to be reasonably meritorious, causes economic harm to insurers providing insurance excess to such policies.

WHEREFORE, North River seeks a declaration:

A.    That O&G and Keystone have committed unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b by wrongfully colluding to direct Keystone's insurance assets under the ACE and Keystone policies to O&G, without establishing Keystone's liability to O&G or coverage for O&G's claims against Keystone.

B.    That the Court award damages in an amount to be determined.

C.    That the Court award North River treble damages.

D.    That the Court award North River its attorneys' fees.

THE NORTH RIVER INSURANCE COMPANY

BY _____
R. Cornelius Danaher, Jr.(ct5350)
Calum B. Anderson (ct07611)
DANAHERLAGNESE, PC
21 Oak Street
Hartford, CT  06106

947671_1