## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE NORTH RIVER INSURANCE COMPANY,<br><br>                         Plaintiff<br><br>      v.<br><br>O&G INDUSTRIES, INC., and KEYSTONE CONSTRUCTION AND MAINTENANCE SERVICES, INC.,<br><br>                         Defendants. | Case 3:13-cv-00589-RNC<br><br>November 15, 2013 |

## MEMORANDUM OF LAW IN SUPPORT OF KEYSTONE CONSTRUCTION AND MAINTENANCE SERVICES, INC.'S MOTION TO DISMISS NORTH RIVER'S FIRST AMENDED COMPLAINT

Defendant Keystone Construction and Maintenance Services, Inc. ("Keystone"), by and through its undersigned attorneys, submits this Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint for Declaratory Judgment (the "Amended Complaint") filed by North River Insurance Company ("North River") in the above-captioned action.

### INTRODUCTION

In this case North River is attempting to void in its entirety the $15 million per occurrence excess insurance policy it sold to Keystone (the "Policy"), so that it does not have any liability in connection with potential future liability incurred by Keystone. It seeks to do so based on alleged breaches of the Policy in connection with the settlement of arbitration claims (the "O&G Arbitration Claims") against Keystone by O&G Industries, Inc. ("O&G"), for which North River was not required to pay any amounts or take any action whatsoever.

Since the Policy never was implicated in connection with the separate O&G Arbitration Claims, Counts 1 and 2 of the Amended Complaint, premised on Keystone's alleged breach of

#52156040

Policy conditions, fail to state causes of action for which relief can be granted. Simply put, Keystone cannot have breached conditions precedent to coverage for claims that North River was not required to pay.

Moreover, even assuming Keystone somehow breached a policy condition in connection with the settlement of the O&G Arbitration Claims (which it did not), North River is not entitled to have the Policy declared void in its entirety, thereby absolving North River of its obligations in connection with claims unrelated to the O&G Arbitration Claims that are otherwise covered under the Policy. At most, North River could avoid its obligations under the Policy in connection with the O&G Arbitration Claims, but it already has been released of any liability for those claims by virtue of a full release granted to it by Keystone. Thus, North River cannot properly allege that it has suffered any harm as a result of the settlements of the O&G Arbitration Claims, and Counts 1 and 2 of the Amended Complaint fail to state claims upon which relief may be granted.

Additionally, dismissal of Count 3 is warranted because, by its plain terms, Keystone did not breach its obligation to maintain underlying insurance in full effect. The Policy terms provide that the exhaustion or depletion of underlying insurance through the payment of claims, which is exactly what is alleged to have happened here, does not breach the condition to maintain underlying insurance. *See* Amended Complaint at ¶ 106 (quoting Condition J of the Policy). Thus, North River's claim that Keystone breached this condition through the settlement of the O&G Arbitration Claims is nonsensical, frivolous, and fails to state a claim upon which relief may be granted.

In Count 5, North River alleges that Keystone breached its implied covenant of good faith and fair dealing by "wrongfully" and "intentionally colluding with O&G to direct [payment

2

of] Keystone's insurance assets under" Keystone's primary and first-level excess insurance policies. Amended Complaint at ¶ 128. Count 5 does not state a viable claim because it does not assert how, in settling the O&G Arbitration Claims, Keystone acted fraudulently, with dishonesty, or with intent to harm North River. Furthermore, no concrete harm has been alleged. Absent a plausible allegation that North River has suffered harm, this count cannot be sustained.

Finally, in Count 6, North River seeks to assert a violation of Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.* ("CUTPA"). North River lacks standing to assert a violation of CUTPA because it did not suffer any harm and Keystone's primary trade or commerce is not related to insurance or claims settlement. The CUTPA claim also is deficient because it is improperly based on conclusory allegations devoid of any factual support.

In all, the Amended Complaint fails to allege a single viable cause of action against Keystone. Accordingly, Keystone respectfully requests that the Court dismiss Counts 1, 2, 3, 5, and 6 in Amended Complaint in their entirety.

## **PROCEDURAL HISTORY**

North River filed its initial Complaint in this case on April 24, 2013 (Doc. No. 1). The initial Complaint asserted a total of four causes of action against Keystone (the fourth cause of action, an alleged violation of CUTPA, was asserted against both Keystone and co-defendant O&G). On September 23, 2013, Keystone timely filed its motion to dismiss the initial Complaint (Doc. Nos. 12-13). Rather than file a response and opposition, North River filed its Amended Complaint on October 15, 2013 (Doc. No. 23), effectively withdrawing its initial Complaint.

The Amended Complaint asserts seven causes of action, five of which are alleged against Keystone (with the remaining two alleged against O&G). Of the claims against Keystone, only

3

Count 5 based on an alleged breach of the covenant of good faith and fair dealing is new.  The remaining four counts are merely a re-pleading of the claims originally asserted against Keystone in the initial Complaint.  North River has made a superficial attempt to bolster its case through re-pleading; however, its minimal additions are devoid of substance, merely serve to add verbiage, and fail to cure the deficiencies plaguing North River's claims.  As such dismissal is warranted under Fed. R. Civ. P. 12(b) for failure to state a claim upon which relief can be granted and also for lack of standing.

## ARGUMENT

### I.     APPLICABLE LEGAL STANDARD

In deciding a motion to dismiss, the complaint "does not need detailed factual allegations;" however, the plaintiff must furnish more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), for the proposition that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 557; internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

The Amended Complaint fails to allege any viable claim for relief against Keystone and the counts against Keystone should be dismissed.

4

## II.     COUNTS 1 AND 2 FAIL TO STATE VIABLE CLAIMS FOR RELIEF AND REQUIRE DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)

Counts 1 and 2 of the Amended Complaint improperly seek a declaration that by virtue of Keystone's alleged breach of Condition G.3.c. (the "Cooperation Clause") and Condition G.4. (the "Consent to Settlement Clause"), the Policy is void in its entirety, thereby fully extinguishing all of North River's obligations to Keystone thereunder. As a basis for the relief sought, North River alleges that Keystone materially breached Conditions G.3.c. and G.4. by: (i) failing to respond to North River's request for documents and information related to the O&G Arbitration Claims, and related settlement thereof, and the bodily injury claims; and (ii) entering into the settlement of the O&G Arbitration Claims without North River' consent. Amended Complaint at ¶¶ 99, 103.

As amended, Counts 1 and 2 do not differ substantively from their earlier iterations in the initial Complaint. As such they fail for the same reasons articulated by Keystone in its original motion to dismiss as follows:

First, the conditions to coverage that North River claims were breached never were implicated, because the O&G Arbitration Claims were resolved and settled within the limits of Keystone's underlying insurance policies, thus never implicating coverage under the North River Policy. Second, even assuming Keystone breached one or more conditions precedent to coverage for the O&G Arbitration Claims, North River cannot void the Policy as respects all future claims. Finally, again assuming Keystone's obligations under the Cooperation and/or Consent to Settlement Clauses were triggered and breached, Counts 1 and 2 still would not state viable claims because North River has not alleged and cannot allege that it has been prejudiced in any concrete way from such a breach.

5

### A.     The Conditions to Coverage Upon Which Counts 1 and 2 Are Premised Never Were Implicated

The conditions that North River alleges in Counts 1 and 2 were breached, requiring, among other things, that Keystone cooperate with North River's investigation of a claim and seek North River's consent prior to settling a claim, clearly apply only with respect to claims for which coverage is triggered under the North River Policy. The O&G Arbitration Claims, however, never triggered coverage under the North River Policy because the settlement of those claims never reached North River's excess layer of coverage. Since coverage never was triggered in connection with the O&G Arbitration Claims, Keystone's obligation to comply with Conditions G.3.c. and G.4. likewise never was triggered.

The purpose of cooperation clauses in insurance contracts is to protect the interests of the insurance company <u>when it is required to provide coverage under a policy.</u> *See Rochon v. Preferred Accident Ins. Co. of New York*, 118 Conn. 190, 198, 171 A. 429, 432 (Conn. 1934); *Augat, Inc. v. Liberty Mut. Ins. Co.*, 410 Mass. 117, 123, 571 N.E.2d 357, 361 (1991) ("Notice, consent-to-settlement, and cooperation provisions share a common purpose . . .: to give an insurer the opportunity to protect its interests."). It goes without saying that where the insurance company is not required to make any payments in connection with a given claim, it has no interests to protect in connection with that claim, and, therefore, the cooperation clause is never implicated.

Here, because North River never made any payments and never will be required to make any payments under the Policy in connection with the O&G Arbitration Claims,[1] the Cooperation Clause was not and never will be triggered as respects the O&G Arbitration Claims. Keystone,

---

[1] Keystone granted North River a full release from all liability associated with the O&G Arbitration Claims. *See* Amended Complaint at ¶ 89.

6

therefore, was not required to cooperate with North River in connection with the O&G Arbitration Claims as a matter of law.

The same rationale holds true with regards to Count 2 and Keystone's alleged breach of the Consent to Settlement Clause. "The prohibition in the policy against settlement of claims without the written consent of the insurer pertains to claims for which liability is assumed under the policy." *Cay Divers, Inc. v. Raven*, 812 F.2d 866, 870 (3d Cir. 1987); *see also Augat, Inc.*, 410 Mass. at 123. Accordingly, where the insurance company does not assume coverage of a claim, the policyholder's settlement of the claim does not violate the insurance contract. *Cay Divers, Inc.*, 812 F.2d at 870.

> Policy provisions prohibiting settlement without the insurer's consent pertain only to claims for which the insurer assumes liability under the policy. So, a denial of liability waives the provisions against settlement by the insured, even though the policy imposes no duty on the insurer to defend the insured.

22 APPELMAN ON INSURANCE 2d § 137.10[C][2] (2003).

The settlement of the O&G Arbitration Claims was made within the policy limits of Keystone's underlying insurance policies, without any payment from North River, and without any possibility of any future payment from North River relative to such claims. *See* Amended Complaint at ¶¶ 49, 88, 89. The rationale underlying the law that a policyholder need not obtain consent to settle from an insurer that has denied coverage also applies to situations where the insurance company does not have any conceivable liability for the claim. In each situation, there is no reason why the insurer should have a right to control the settlement of a claim where it is not assuming any liability. Accordingly, Keystone cannot be deemed to have breached the Consent to Settlement Clause as it relates to the O&G Arbitration Claims.

7

To uphold North River's claim under these circumstances, in which the North River Policy was not and never will be implicated in connection with the O&G Arbitration Claims, would lead to an absurd result. Sustaining North River's claim would subject an insurer's right to settle a claim within that insurer's policy limits to the whims of an excess insurer whose policy is not even implicated. And it would produce an irrational result, whereby an excess insurance company would be allowed to block and veto the independent business decisions of two separate underlying insurance companies and the policyholder. *See Demers Bros. Trucking, Inc. v. Certain Underwriters at Lloyd's, London*, 600 F. Supp. 2d 265, 278 (D. Mass. 2009) ("When scrutinizing a contract, a court should interpret broad contract language so as to avoid absurd results."); *see also Emhart Indus., Inc. v. Century Indem. Co.*, 559 F.3d 57, 71 (1st Cir.2009) (refusing to accept an interpretation of an insurance policy that would "lead to absurd results"); *Chock Full O'Nuts Corp. v. Tetley, Inc.*, 152 F.3d 202, 208 (2d Cir. 1998) ("Parties to an agreement are presumed to act sensibly and an interpretation that produces an absurdly harsh result is to be avoided . . . .") (internal citations omitted)..

Thus, Keystone did not breach the Cooperation or Consent to Settlement Clauses as a matter of law, and Counts 1 and 2 of North River's Amended Complaint fail to state a claim upon which relief may be granted. Accordingly, they should be dismissed in their entirety.

**B.      Any Alleged Breaches of Policy Conditions in Connection with the O&G Arbitration Claims Do Not Entitle North River to Void the Insurance Policy in its Entirety**

Even assuming the Cooperation and/or Consent to Settlement conditions had been implicated and breached as respects the O&G Arbitration Claims, North River cannot void the Policy in its entirety, thereby relieving North River of all its obligations to Keystone in connection with potential future claims covered under the Policy. Rather, in the event of any

8

such breach, North River would be entitled, at most, to avoid its indemnity obligations in connection with the O&G Arbitration Claims only.  The Policy, however, would remain in full force and effect, and North River would continue to be bound by its obligations thereunder in connection with any other claims falling within the Policy's coverage. *See, e.g.*, 14 WILLISTON ON CONTRACTS § 41:5 (4th ed. May 2013) ("Where the warranty or condition which is broken does not affect the risk on certain items, the insurance should not be held to be ineffective as to those items.  Such construction would subject the insured to a forfeiture for a cause which had no substantial relation to the interest of the insurer.").

Here, North River already has obtained everything to which it could conceivably be entitled under the law for any alleged breach by Keystone of a condition precedent to coverage for the O&G Arbitration Claims -- a full release of liability for such claims.  Thus, the relief sought by North River – to void the Policy in its entirety – is overbroad, improper and not supported by existing law.  For this additional reason, Counts 1 and 2 fail to state a claim upon which relief may be granted, and, therefore, should be dismissed in their entirety.

### C.  Any Alleged Breaches of Conditions G.3.c. and G.4. Did Not Prejudice North River, Thereby Vitiating Counts 1 and 2

Even if the Cooperation and Consent to Settlement Clauses had been triggered, Counts 1 and 2 still would not state viable claims because North River has suffered no damage.  In order for a policyholder's breach of the Cooperation or Consent to Settlement Clauses in an insurance contract to relieve the insurance company of liability under a policy, the breach must be substantial and material and actual prejudice to the insurer's interests due to the breach of the condition must be demonstrated. *E.g.*, *Darcy v. Hartford Ins. Co.*, 407 Mass. 481, 488, 554 N.E.2d 28, 33 (1990); *O'Leary v. Lumberman's Mutual Casualty Co.*, 178 Conn. 32, 38, 420 A.2d 888, 891 (Conn. 1979); *Rochon v. Preferred Accident Ins. Co. of New York*, 171 A. at 432

9

(holding that breach of cooperation clause actionable only if it adversely affects the interests of the insurance company in a substantial and material way); 14 COUCH ON INSURANCE § 199:76, *Proof of Prejudice Required* (3d ed. Dec. 2012) ("In order to be relieved of its obligations under an insurance contract . . . an insurer must show not only that the insured breached the contract, but also that it was prejudiced as a result.").

Thus, any alleged breaches of the Cooperation and Consent to Settlement Clauses by Keystone would not relieve North River of its obligations under the Policy unless North River was actually prejudiced by the breaches. *Rochon v. Preferred Accident Ins. Co. of New York*, 171 A. at 432; *Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F. Supp. 164, 197 (D. Conn. 1984) (striking insurance company's defense that policyholder failed to reasonably cooperate because insurance company had failed to prove that its interests were adversely affected by policyholder's alleged lack of cooperation).

Here, North River has not alleged, and cannot allege, that it was prejudiced in any substantial and material way because:  (i) it was not required to provide any form of coverage under the Policy in connection with the O&G Arbitration Claims; and (ii) it received a release from all liability in connection with O&G's Arbitration Claims.  North River's bare conclusory allegations that Keystone's alleged "material breach" caused it prejudice because (i) Keystone's admission of liability forecloses North River's investigation into the validity of the O&G Arbitration Claims; and (ii) has exhausted the underlying policy limits by admitting liability in excess of $37 million (*see* Amended Complaint at ¶¶ 93-95, 100, 104) do not suffice to state viable claims. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  North River seeks to dispense with the requirement of alleging

10

actual harm and have the Court accept a mere presumption of prejudice.  This argument, however, has been explicitly rejected both in general, and specifically in connection with excess insurance carriers.  *Employers' Liab. Assur. Corp. v. Hoechst Celanese Corp.*, 43 Mass. App. Ct. 465, 478-79, 684 N.E.2d 600, 609 (Mass. Ct. App. 1997) (refusing to accept excess carrier's presumption of prejudice in the context of a late notice claim).  To sustain a claim based on a presumption of harm or prejudice, especially in connection with an excess insurer, "would be quite anomalous.  Excess carriers are not as likely as primary carriers to suffer harm . . . because they are at a remove from the investigation and handling of claims; ordinarily they are not bound to do this work and they have no duty to defend the insured.  Mostly they rely on the primary insurer in the first instance to do the job." *Id.*

Since North River has not alleged and, indeed, cannot allege the requisite prejudice, Counts 1 and 2 fail to state a claim upon which relief may be granted, and, therefore, should be dismissed in their entirety.

## III.    COUNT 3 IS PREMISED ON A DISTORTION OF CONDITION J.'S PLAIN MEANING AND FAILS AS A MATTER OF LAW

Perhaps the most frivolous of all of North River's Counts, Count 3 of the Amended Complaint fails to state a claim upon which relief may be granted.  The plain language of the condition North River contends was breached in Count 3 conclusively demonstrates that it was not breached.

In Count 3, North River alleges that Keystone breached Condition J. of the Policy, which requires that Keystone maintain underlying insurance "in full effect during this policy period, except for any reduction in the aggregate limits solely by payment of claims and/or claims expenses."  Amended Complaint at ¶ 106 (quoting Policy, Condition J. at Page 7 of 8, FM 101.0.302 (9/96)) (emphasis added).  North River argues that Keystone materially breached

11

Condition J.'s requirement to maintain underlying insurance in full when it settled the O&G

Arbitration Claims and exhausted the policy limits of its underlying insurance. *See* Amended

Complaint at ¶ 107. North River makes a conclusory allegation, unsupported by any factual

recitation, that this alleged breach caused North River to suffer prejudice through the "improper

exhaustion" of the underlying policy limits. Amended Complaint at ¶ 108.

By its plain terms, however, Count 3 fails to state an actionable claim for relief. Indeed,

North River acknowledges that Condition J. requires the maintenance of underlying insurance in

full effect, <u>except to the extent that underlying insurance is reduced by virtue of the payment of</u>

<u>claims or claim expenses</u>. *See* Amended Complaint at ¶ 106. Nevertheless, North River

incredulously alleges that the exhaustion of Keystone's underlying insurance through the

payment and settlement of the O&G Arbitration Claims somehow constituted a breach of

Condition J. *See* Amended Complaint at ¶ 107. No support exists for such a strained and

distorted reading of this clear and unambiguous provision. *See Dexter Corp. v. Nat'l Union Fire*

*Ins. Co. of Pittsburgh, PA.*, No. 3:95 CV 00702 (WWE), 1997 WL 289667, at *4 (D. Conn.

March 12, 1997) (holding that identical underlying insurance maintenance provision was clear

and unambiguous and refusing to give effect to insurance company's interpretation which would

have conflicted with plain language of policy provision); *GRE Ins. Grp. v. Metro. Boston Hous.*

*P'ship, Inc.*, 61 F.3d 79, 81 (1st Cir. 1995) (under Massachusetts law, insurance policies are

interpreted according to their plain and ordinary meaning, with any ambiguities resolved against

the insurance company, as the drafter).

Condition J., by its terms, explicitly provides that Keystone's requirement to maintain

underlying insurance in full excludes the exhaustion or depletion of such underlying insurance

through the payment of claims. This exemption is precisely what occurred in connection with

12

the O&G Arbitration Claims:  Keystone's underlying insurance was exhausted through payments for the O&G Arbitration Claims.  The settlement payments made in connection with the O&G Arbitration Claims, which exhausted Keystone's underlying policy limits, therefore, did not breach Condition J.

Accordingly, Count 3 fails to state a claim upon which relief may be granted, and, therefore, should be dismissed in its entirety.

## IV.     ABSENT ALLEGATIONS OF KEYSTONE'S BAD FAITH AND A CONCRETE INJURY TO NORTH RIVER, THE AMENDED COMPLAINT FAILS TO PLEAD A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH

In amending its Complaint, North River has added one new cause of action against Keystone (Count 5), claiming that Keystone breached its implied covenant of good faith and fair dealing by intentionally breaching its obligations under the North River Policy (namely the duty to cooperate and obtain North River's consent to settle), and further by "intentionally colluding with O&G to direct [payment of] Keystone's insurance assets" under Keystone's primary and first-level excess policies with Ace American ("Ace") and Everest National Insurance Company ("Everest"), respectively.  Amended Complaint at ¶ 128.  As a result, North River alleges that it has suffered an ascertainable loss of $11 million in underlying insurance coverage.  Amended Complaint at ¶ 129.  This claim fails because (i) North River's allegations do not sufficiently allege that Keystone acted in bad faith or with an improper motive; and (ii) North River has not alleged that it has suffered any concrete cognizable harm.

Massachusetts law recognizes an implied covenant of good faith and fair dealing in every contract.  *FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 100 (1st Cir. 2009).  "The scope of the covenant is only as broad as the contract that governs the particular relationship."  *Id.* (citations omitted).  "The implied covenant of good faith and fair dealing is a judicial convention

13

designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain." *Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 240(D. Mass. 2011) (citations omitted). The "essential inquiry" is whether the challenged conduct conforms to the parties' understanding of their respective obligations under the contract. *Id.* Notably, the covenant "does not supply terms that the parties were free to negotiate, but did not, nor does it 'create rights and duties not otherwise provided' for in the contract." *FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d at 100 (citations omitted).

Allegations that do not involve dishonesty or a purposeful intent to injure the plaintiff fail to state a viable claim for breach of the implied covenant of good faith and fair dealing. *FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d at 100 (affirming district court's holding that covenant of good faith was not breached because plaintiff failed to allege that defendant's actions involved dishonesty and were done purposefully to injure the plaintiff); *see also Christiansen v. Kingston School Committee*, 36 F. Supp. 2d 212, 226-27 (D. Mass. 2005) (holding that plaintiff did not state a claim for breach of the covenant of good faith and fair dealing because allegations did not state that defendant's conduct was taken in bad faith or with improper motive). Claims for breach of the implied covenant of good faith and fair dealing "are distinct from simple breach of contract claims and require additional factual allegations of unfairly leveraging the contract terms for undue economic advantage." *Christiansen v. Kingston School Committee*, 36 F. Supp. 2d at 229.

North River has not alleged any fraud, deceit or lack of good faith by Keystone. Thus, even if the Amended Complaint pleaded viable claims for breach of contract against Keystone, this alone, absent allegations of bad faith, would be insufficient to sustain a claim under Count 5.

14

*Christiansen v. Kingston School Committee*, 36 F. Supp. 2d at 226 ("not every breach of contract is a breach of the implied covenant of good faith and fair dealing").  North River's conclusory allegations that Keystone "intentionally" breached its contractual obligations and "colluded" with O&G to direct insurance proceeds are insufficient under Fed. R. Civ. P. 12(b)(6).  And in any event, North River's claim of wrongful collusion is contradicted directly by its other allegations that Keystone was intimidated into settling the O&G Arbitration Claims. *See, e.g.*, Amended Complaint at ¶ 149.  Count 5 also fails to allege that Keystone's alleged breaches of its contractual obligations and alleged collusion to direct insurance proceeds under the Ace and Everest policies were carried out with the purpose of inflicting harm upon North River.  In fact, just the opposite is true.  As North River admits, Keystone granted North River a release in connection with the settlement of the O&G Arbitration Claims.  Amended Complaint at ¶ 89.  The grant of a release to North River demonstrates that Keystone did not harbor an improper motive of harming North River and undermines North River's assertion of a breach of the covenant of good faith and fair dealing.

Additionally, Count 5 cannot be sustained because a claim for breach of the covenant of good faith and fair dealing requires the plaintiff to demonstrate that its right "to receive the fruits of the contract" has been injured or destroyed.  Here, the North River Policy never was triggered in connection with the O&G Arbitration Claims and North River did not make any payment to settle those claims and received a release in connection with the claims.  Moreover, North River's allegation of a loss of $11 million in underlying coverage lacks merit because North River has no property rights in the Ace and Everest policies.  Keystone purchased the policies from Ace and Everest, and accordingly, Keystone owns the property rights under those policies.

15

Accordingly, North River has not suffered a concrete loss and has not been denied the fruits of its contract.  Thus, Count 5 fails to plead a viable claim and requires dismissal.

**V.     DISMISSAL OF THE CUTPA CLAIM ASSERTED IN COUNT 6 IS NECESSARY BECAUSE NORTH RIVER LACKS STANDING TO ASSERT IT AND FAILS TO PLEAD THE REQUISITE ELEMENTS OF THE CLAIM**

Count 6 of the Amended Complaint asserts a violation of CUTPA against Keystone, arguing that Keystone "colluded" with O&G to wrongfully direct the payment of insurance proceeds by Keystone's underlying insurers, Ace and Everest, to O&G.  Dismissal of this claim is warranted under Fed. R. Civ. P. 12(b)(6) and 8(a), because it is based purely on conclusory allegations of collusion, the unfounded assumption that Keystone somehow controlled the acts of two independent insurance companies, and a threadbare recitation of the elements of a CUTPA claim that is devoid of substantive factual support.  Count 6 also fails because North River has suffered no harm and thus lacks standing to assert a CUTPA claim, thereby requiring dismissal pursuant to Fed. R. Civ. P. 12(b)(1).

**A.     Dismissal Is Warranted Under Fed. R. Civ. P. 12(b)(1), because North River Has Suffered No Harm, And Thus Lacks Standing**

The CUTPA claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because North River has suffered no injury, thereby depriving it of standing to assert the claim.  "The issue of standing implicates a court's subject matter jurisdiction."  *Golden v. Hamer*, No. FSTCV085008396S, 2009 WL 3086417, at *7, (Conn. Super. Ct. Aug. 25, 2009) (dismissing CUTPA claim on basis of standing); *R.S. Silver & Co., LLC v. Bridgewater Assocs., Inc.*, No. CV030196829, 2004 WL 3129600, at *2 (Conn. Super. Ct. Dec, 16, 2004) (granting motion to dismiss CUTPA claim for lack of standing).

In order to have standing to assert a CUTPA claim, the plaintiff must possess a "colorable claim of a direct injury" caused by the defendant's conduct.  *Ganim v. Smith and Wesson Corp.*,

16

258 Conn. 313, 346 (Conn. 2001) (holding that CUTPA's ascertainable loss requirement does not displace the remoteness doctrine as a standing limitation); *see also ZeeBaas, LLC v. Koelewyn*, Civ. Action No. 3:11CV11(VLB), 2012 WL 2327693, at \*6 (D. Conn. June 19, 2012) (ascertainable loss is a threshold barrier that limits the class of persons that may bring a CUTPA action seeking actual damages). "[I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so." *Ganim v. Smith and Wesson Corp.*, 258 Conn. at 347.  Where the plaintiff's alleged injuries are, in fact, derivative injuries to a third party, the plaintiff lacks direct injuries and thus has no standing to assert a claim. *Id.* at 347-48; *see also Burton v. Dominion Nuclear Connecticut, Inc.*, 300 Conn. 542 (Conn. 2011) (plaintiff lacked standing to assert CUTPA claim because plaintiff's alleged injuries to her health as a result of elevated water temperatures from power plant's thermal plume were remote, indirect and derivative).

North River cannot argue that it has suffered any direct harm to sustain its CUTPA claim. North River's only allegation of harm is that it has been injured by virtue of the exhaustion of Keystone's underlying primary and first-level excess policy limits of $11 million.  Amended Complaint at ¶ 142.  But, to date, North River has not been required to make any payments under the North River Policy in connection with any claims arising from the Incident.  Moreover, North River never has made a payment to settle the O&G Arbitration Claims, and has received a full release in connection with the settlement of those claims.  Thus, North River has suffered no harm.  In the absence of any injury, North River lacks standing to assert a violation of CUTPA. Accordingly, Count 6 should be dismissed in its entirety.[2]

---

[2]    It bears noting that CUTPA was enacted primarily as consumer protection legislation to guard against unfair and deceptive business practices.  Thus, allowing an insurance company to utilize the statute against its own policyholder conflicts with the spirit and purpose of the statute. *See, e.g., Connecticut National Bank v. DiCocco*, No. 91046, 1990 WL 283829, at \*2 (Conn. Super. Ct. Aug. 13, 1990) ("Since CUTPA is consumer protection

17

**B.      The CUTPA Claim is Purely Conclusory and Lacks Plausible Factual Support, Thereby Requiring Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

### 1.      Keystone Did Not Collude with O&G and Had No Control Over the Independent Actions and Business Decisions of Its Insurers

North River's CUTPA claim is premised on:  (i) the unsupported allegation that Keystone colluded with O&G (Amended Complaint at ¶ 136), and (ii) the implied assumption that Keystone had control over the independent business decisions made by Ace and Everest in settling the O&G Arbitration Claims.  North River does not – and cannot – allege sufficient facts to support either premise.  North River's bald conclusory statement of collusion is insufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal,* , 556 U.S. at 678 ("threadbare recitals of the elements . . . [and] mere conclusory statements[ ] do not suffice").  Additionally, the Complaint contains no allegations regarding how Keystone, "colluding" with O&G, was able to exert its will and control over the decisions of Keystone's insurers, Ace and Everest, and improperly cause these two independent insurance companies to settle the O&G Arbitration Claims.  These obviously false contentions are completely devoid of any factual support.  For this reason alone, North River's CUTPA claim against O&G should be dismissed.

### 2.      North River Cannot Show Unfair or Deceptive Practices by Keystone

"[T]o prevail on a CUTPA claim, the plaintiffs must prove that (1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce ... and [plaintiff suffered] ascertainable loss of money or property as a result of the defendant's acts or practices." *Caires v. JP Morgan Chase Bank, N.A.*, 880 F. Supp. 2d 288, 299 (D. Conn. 2012).

---

legislation, in our opinion, the defendants, . . . correctly highlight the incongruity of allowing the bank to invoke consumer protection legislation against persons described as bank customers."); *D'Albero, Jr. v. Vailette*, No. CV NH-9112-4940, 1992 Conn. Super. LEXIS 3431, at *1-*2 (Conn. Super. Ct. Nov. 19, 1992) (CUTPA enacted to "provide a more equitable balance in the relationship of consumers and persons engaged in business activities." Thus to allow its use by a business against its customers would "distort" the purpose of the statute and "would be to stand CUTPA on its head.")

The Amended Complaint does not identify what acts Keystone allegedly committed that were unfair and deceptive. *Id.* at 301 (dismissing CUTPA claim for failure to identify "unscrupulous and unethical misrepresentations"). All North River has alleged – and indeed can allege – is that in response to O&G's Arbitration Claim, Keystone provided notice to its insurers, requesting coverage, and subsequently entered into the agreements pursuant to which Ace and Everest paid their policy limits in connection with the settlement of the O&G Arbitration Claims. These allegations evidence nothing more than a policyholder attempting to protect its interests and resolve outstanding claims for which it faces liability.

Not only was this conduct completely reasonable, but any allegations of unfair and deceptive acts is directly contradicted by the fact that once the O&G Arbitration Claims were settled, Keystone provided North River a full release of liability in connection with the O&G Arbitration Claims. Moreover, North River cannot invoke Keystone's alleged breaches of its obligations under the North River Policy (namely, purported breaches of the Duty to Cooperate and Consent to Settlement Clauses) as a basis for a CUTPA claim. Even if North River's contract allegations were sufficiently pled, they would allege nothing more than simple breach of contract claims. Those allegations cannot and do not rise to the level of unfair or deceptive practices necessary to assert a violation of CUTPA.

Additionally, North River's vague and conclusory allegations of harm are not sufficient to satisfy the requirement that a CUTPA plaintiff suffer an "ascertainable loss of money or property as a result of the defendant's acts…." *Caires v. JP Morgan Chase Bank, N.A.*, 880 F. Supp. 2d at 299. North River's sole allegation of damage is a purported loss of $11 million in underlying insurance. But, as Keystone's second-level excess liability insurer, North River has no property interest in Keystone's underlying primary and first-level insurance policies. These

19

policies were purchased by Keystone, and thus, the rights and benefits accruing thereunder belong to Keystone.  North River has no property rights in Keystone's others policies. Accordingly, it cannot claim that it suffered a loss of its property as a result of the exhaustion of Keystone's underlying policies.

### 3.     Keystone's Allegedly Wrongful Acts Were Not Committed in the Conduct of Its Trade or Commerce

CUTPA prohibits and makes actionable "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b.  "Trade" and "commerce," in turn, are defined as "the advertising, the sale or rent, or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42-110a(4).

A claim based on violation of CUTPA cannot lie unless the alleged wrongful acts were undertaken in connection with the defendant's primary trade or commerce.  *See, e.g., Abley Waste Oil Services, Inc. v. Ravenswood Development Corp.*, No. CV95-0369487S, 1995 Conn. Super. LEXIS 2626, at *11 (Conn Super. Ct. Sept. 14, 1995).  "Trade" and "commerce" are defined as "the advertising, the sale or rent, or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42-110a(4).  For purposes of stating a violation of CUTPA, the wrongful conduct must have been performed as the defendant's <u>primary</u> trade and commerce, and was not an act that was merely <u>incidental</u> to the defendant's business.  *See, e.g., Arwana Mills Co. v. United Technologies Corp.*, 795 F. Supp. 1238, 1253 (D. Conn. 1992) (dismissing CUTPA claim against defendant-lessee, a repairer and servicer or aircraft engines, for alleged wrongdoing arising from its conduct in

20

leasing the property, "because leasing the property is not this defendant's 'trade or commerce' within the meaning of CUTPA). Wrongful conduct that is incidental to the defendant's primary trade will not support a CUTPA claim.  *Id.*; *see also Abley Waste Oil Services, Inc. v. Ravenswood Development Corp.*, No. CV95-0369487S, 1995 Conn. Super. LEXIS 2626, at *11 (Conn Super. Ct. Sept. 14, 1995) (defendant's disposal of waste oil was incidental to its trade of developing real estate; "[t]herefore, a CUTPA claim based on such alleged conduct is not viable against the defendant"); *Burkert v. Petrol Plus of Naugatuck, Inc.,* 216 Conn. 65, 85 (Conn. 1990) (CUTPA claim could not be maintained by buyers of allegedly defective transmission fluid against fluid's trademark licensor for failure to warn purchasers of potential problems with the fluid because licensor was not in the business of advertising the trademark borne by the fluid); *Heyman Associates #1 v. United Technologies Corp.*, No. CV91 289456S, 1993 Conn. Super. LEXIS 422, at *10 (Conn. Super. Ct. Feb 16, 1993) (landlord failed to plead CUTPA violation in connection with tenant's contamination of leased premises during the course of conducting its business because tenant was not in the "business of being a lessee, and therefore, its alleged unlawful and deceptive acts were not done 'in the conduct of its trade or commerce'"); *Edmondson v. Stop & Shop Cos., Inc.*, No. 26313, 1991 Conn Super LEXIS 56, at *2 (Conn. Super. Ct. Jan 3, 1991) (defendant's breach of an agreement to pay expenses resulting from a fall on defendant's premises did not constitute unfair or deceptive acts in the conduct of any trade or business because the defendant was not in the business of paying expenses incurred as a result of a fall).

North River's CUTPA claim does not make the necessary showing to survive dismissal. Keystone is a construction subcontractor, and the settlement of claims and direction of insurance proceeds is not its primary trade or commerce.  North River's repleaded allegations in this regard

allege nothing more than that "Keystone's primary trade or business included commercial transactions and activities that it engaged in on a regular basis."  Amended Complaint at ¶ 131. This vague allegation provides no insight into Keystone's primary business; indeed, all businesses engage in "commercial transactions and activities."  Additionally, North River's claim that Keystone engages in risk-management activities, including those related to insurance claims (Amended Complaint at ¶ 132), falls short, because as North River admits, Keystone is a construction subcontractor, hired to install and perform work in connection with above-ground piping and mechanical equipment for the construction project at the Kleen Energy Facility. Amended Complaint at ¶ 24.  Any insurance-related activities in which Keystone engaged were incidental and not primary aspects of its business.  Count 6, therefore, should be dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, Keystone respectfully requests that the Court enter an Order: (i) dismissing the Claims asserted against Keystone in North River's Amended Complaint (Claims One, Two, Three, Five and Six) in their entirety; (ii) granting the dismissal of these claims with prejudice, since the deficiencies in North River's allegations cannot be corrected through re-pleading; and (iii) granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 15th day of November, 2013.

KEYSTONE CONSTRUCTION AND
SERVICE MAINTENANCE, INC.


/s/ *Jared Cohane ct24264*
Jared Cohane
Hinckley Allen & Snyder LLP
20 Church Street
Hartford, CT 06103
Tel: 860-331-2724
Fax: 860-331-2725
Fed Bar: ct24264
jcohane@hinckleyallen.com

#52156040

## **CERTIFICATION**

This is to certify that on the above date, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jared Cohane ct24264    /*
Jared Cohane

24

#52156040