UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE NORTH RIVER INSURANCE COMPANY | : CIVIL ACTION NO.: 3:13-cv-00589 (RNC) |
| v. | : |
| O&G INDUSTRIES, INC. KEYSTONE CONSTRUCTION AND MAINTENANCE SERVICES, INC. | : JANUARY 24, 2014 |

## AFFIDAVIT OF R. CORNELIUS DANAHER, JR. IN SUPPORT OF THE NORTH RIVER INSURANCE COMPANY'S OBJECTION TO O&G INDUSTRIES, INC.'S MOTION FOR SANCTIONS

R. Cornelius Danaher, Jr., being duly sworn, does hereby depose and say:

1. I am over 21 years of age and understand the obligations of making an oath.

2. I am a partner in the law firm DANAHERLAGNESE, PC which represents the plaintiff, The North River Insurance Company ("North River"), in the above-referenced matter.

3. I have personal knowledge of the matters set forth herein.

4. I make this affidavit in support of North River's Objection to O&G Industries, Inc.'s ("O&G") Motion for Sanctions.

## INTRODUCTION

5. O&G's Motion for Sanctions [Doc. Nos. 50 & 54] is founded upon the baseless accusation that North River has "committed a fraud on the Court" for alleging that O&G's motive for causing the exhaustion of the ACE primary policy was to strip Keystone Construction and Maintenance Services, Inc. ("Keystone") of the only policy available to defend Keystone against the remainder of O&G's $44.6 million arbitration claim. As grounds for that

accusation, O&G has represented to this Court that on October 28, 2013, in a telephone conversation, O&G's counsel notified counsel for North River that, at or about the time of the ACE settlement (May 25, 2012), O&G and Keystone also settled the remainder of the O&G Arbitration Claim. Therefore, O&G argues, it could not have been motivated to strip Keystone of a defense because there was nothing left to defend.

6. The above accusation, however, is contradicted by O&G and Keystone's own letters and pleadings. As more particularly set forth herein, for months following the May 25, 2012 ACE settlement, Keystone's counsel continued to demand that North River settle the remaining O&G Arbitration Claim. In addition, O&G, in a pleading, represented that in late August 2012, Keystone's counsel wrote to Everest's counsel "advising that Keystone was in poor financial condition, asking Everest to negotiate a resolution with O&G and advising that if Everest did not, Keystone would settle with O&G and assign its rights against Everest to O&G." See Paragraph 20 of this Affidavit.

7. Neither O&G nor Keystone notified North River that they had settled the remainder of the O&G Arbitration Claim until February 5, 2013, eight months after the purported settlement date. See Paragraph 21 of this Affidavit.

8. As further grounds for its accusation, O&G also has represented that Westchester Surplus Lines provided Keystone a defense under a professional liability policy. However, throughout this case, Keystone repeatedly represented to North River that no insurance company provided it a defense to the O&G Arbitration Claims. As late as March 11, 2013, (after settlement of the O&G Arbitration Claim), Keystone's counsel wrote to North River's counsel: "[a]s you are also aware, the only insurance carrier which acknowledged any duty to defend

2

Keystone with respect to any of the claims since the Allied-World CCIP policy was exhausted was ACE...." See Paragraph 25 of this Affidavit.

**DOCUMENTARY EVIDENCE IN SUPPORT OF NORTH RIVER'S OBJECTION**

9. On December 20, 2011, Eric Eisenberg of Hinckley, Allen & Snyder LLP, counsel for Keystone, wrote an email to me advising that "O&G Industries, Inc. has made a claim (copy attached) against Keystone for alleged property damage and associated delay damages resulting from the February 7, 2010 explosion at the Middletown, CT Kleen Energy plant." This letter demanded that North River defend and, in the event Keystone was found liable, indemnify Keystone against these claims. Attached hereto marked **Exhibit A** is a true and accurate copy of the email from Eric Eisenberg to Neil Danaher, dated December 20, 2011.

10. On February 27, 2012, Eric Eisenberg wrote a letter to me stating: "[t]he arbitration claim by O&G is moving forward... and it is likely that counsel will not be available to defend Keystone" and that "Keystone is also very concerned that the bodily injury mediation process is proceeding without the involvement of counsel for Keystone, because Allied World has ceased funding Keystone's bodily injury defense." (Emphasis added.). The letter further states that "[i]t is imperative that a method be found, in the very near future, to fund a defense for Keystone" and that "[t]his situation is not likely to change in the future..." (Emphasis added.). Eisenberg's letter, dated February 27, 2012, does not mention or refer to a Westchester Surplus Lines Insurance policy. Attached hereto marked **Exhibit B** is a true and accurate copy of the letter from Eric Eisenberg to Neil Danaher, dated February 27, 2012.

11. On May 16, 2012, Eric Eisenberg wrote a letter to me regarding Keystone's arbitration with O&G. The letter states that "[i]n the Arbitration, O&G claims that Keystone is responsible for the Explosion and seeks damages against Keystone" and that "Keystone demands

3

that North River indemnify it with regard to the Arbitration Claims and participate in settlement discussions with O&G with regard to the Arbitration Claims." The letter further goes on to state that "Keystone is in poor financial condition and needs to resolve its various liability exposures, including the Arbitration Claims, as soon as possible." (Emphasis added.). Eisenberg's letter, dated May 16, 2012, does not mention or refer to a Westchester Surplus Lines policy. Attached hereto marked **Exhibit C** is a true and accurate copy of the letter from Eric Eisenberg to Neil Danaher, dated May 16, 2012.

12. On May 25, 2012, Keystone, ACE American Insurance Company and O&G entered into a partial settlement of the O&G Arbitration Claim wherein ACE paid its $1 million policy limits to satisfy the attorney's fees portion of the claim. Attached hereto marked **Exhibit D** is a true and accurate copy of the Settlement Agreement, dated May 25, 2012.

13. On June 27, 2012, I sent a letter to Eric Eisenberg stating that "[n]either ACE nor Keystone has provided North River information regarding the status of the O&G arbitration. Please (1) provide us with contact information of the law firm defending Keystone; (2) provide us a summary of what has occurred to date; and (3) provide us with copies of all documentation that has surfaced in the arbitration." Attached hereto marked **Exhibit E** is a true and accurate copy of the letter from Neil Danaher to Eric Eisenberg, dated June 27, 2012.

14. On August 23, 2012, Eric Eisenberg sent a letter to me where he informed me that "Hinckley Allen is the law firm representing Keystone in the O&G arbitration" and that "[t]o date, nothing substantive has happened in the arbitration as we try to reach a settlement with O&G." (Emphasis added.). The letter further stated that "Keystone is in poor financial condition, and, in the face of the continuing refusal of North River to honor its coverage obligations, must act to protect its interests and to resolve its various liability exposures,

4

including the Arbitration Claims, as soon as possible." Attached hereto marked **Exhibit F** is a true and accurate copy of the letter from Eric Eisenberg to Neil Danaher, dated August 23, 2012.

15. While O&G has represented to this Court that the O&G Arbitration Claim was settled at or about the time of the ACE settlement (May 25, 2012), Keystone's counsel, in his letter, dated August 23, 2012, represented to North River that the arbitration was ongoing and that Keystone was still trying "to reach a settlement with O&G." Attached hereto marked **Exhibit F** is a true and accurate copy of the letter from Eric Eisenberg to Neil Danaher, dated August 23, 2012.

16. On August 31, 2012, I wrote a letter to Eric Eisenberg requesting a myriad of documents, including but not limited to "all documents and other information in Keystone's possession concerning the legal and factual basis for O&G's claims and Keystone's defenses." I also "requested a status of the O&G arbitration including a summary of what has occurred to date and copies of all documentation that has surfaced in the arbitration." Attached hereto marked **Exhibit G** is a true and accurate copy of the letter from Neil Danaher to Eric Eisenberg, dated August 31, 2012.

17. Keystone did not respond to my letter dated August 31, 2012.

18. On November 30, 2012, Calum B. Anderson, a partner in my firm, wrote to Eric Eisenberg stating that he understood that "O&G Industries, Inc. ("O&G") and Keystone Construction and Maintenance Services, Inc. ("Keystone") have entered into a settlement of the claims that O&G made against Keystone in the arbitration commenced on or about December 16, 2011…" Anderson requested "copies of all documents evidencing or concerning the settlement, including, without limitation, the settlement agreement; drafts; notes; memoranda; and correspondence (including electronic communications) by and between persons, including

5

attorneys, acting upon O&G's and Keystone's behalf leading up to the settlement." Attached hereto marked **Exhibit H** is a true and accurate copy of the letter from Calum B. Anderson to Eric Eisenberg, dated November 30, 2012.

19. Keystone did not respond to Calum Anderson's letter, dated November 30, 2012.

20. On January 8, 2013, O&G filed a Second Amended Complaint in the case <u>O&G Industries, Inc. v. Everest National Insurance Company</u>, Civil Action No. 3:12-cv-01687-AWT. In its Second Amended Complaint, O&G alleges the following:

> **PARAGRAPH 42:** "On May 25, 2012, the ACE Policy was exhausted through an agreement between ACE, Keystone and O&G for the ACE Policy limits to be paid to O&G to resolve the Attorneys' Fees Claim. Everest was promptly notified of the exhaustion of the ACE Policy."
>
> **PARAGRAPH 48:** "After Everest's refusal to participate in a pool to settle various lawsuits, Keystone repeatedly informed Everest of its desire that Everest settle O&G's Arbitration claims. Among other things in that regard, Keystone agreed to attend a meeting with Everest and O&G <u>in late June or early July, 2012</u> at which an effort was made to settle the O&G Arbitration claims. That meeting did not take place due to the purported unavailability of Everest. Further, Keystone's counsel wrote to Everest's counsel on <u>August 23 and 24, 2012</u>, respectively, advising that Keystone was in poor financial condition, asking Everest to negotiate a resolution with O&G and advising that if Everest did not, Keystone would settle with O&G and assign its rights against Everest to O&G." (Emphasis added.).

Attached hereto as **Exhibit I** is a true and accurate copy of the Amended Complaint filed in <u>O&G Industries, Inc. v. Everest National Insurance Company</u>, Civil Action No. 3:12-cv-01687-AWT, dated January 8, 2013.

21. On February 5, 2013, I received a letter from Finley Harckham of Anderson Kill, P.C., counsel for O&G, informing me that O&G settled its arbitration claims against Keystone. [This is the settlement that O&G now claims was made at or about the time of the ACE settlement agreement, i.e. May 25, 2012.] This was the first notice that O&G or Keystone

provided North River that the remaining portion of the O&G arbitration claim has been settled. Attached hereto marked **Exhibit J** is a true and accurate copy of the letter from Finley Harckham to Neil Danaher, dated February 5, 2013.

22. On February 8, 2013, I wrote a letter to Finley Harckham. In this letter, I requested, among other documents, "copies of all documents evidencing the settlement between O&G and Keystone." Attached hereto marked **Exhibit K** is a true and accurate copy of the letter from Neil Danaher to Finley Harckham, dated February 8, 2013.

23. On February 12, 2012, Finley Harckham wrote to me ignoring North River's request for the settlement documents and stating "the settlement need be of no concern to North River..." Attached hereto as **Exhibit L** is a true and accurate copy of the letter from Finley Harckham to Neil Danaher, dated February 12, 2013.

24. On February 21, 2013, I wrote to Finley Harckham. I stated in this letter: "[I]t is difficult to understand why Keystone did not present a defense. Perhaps it is because Keystone was stripped of defense capability as a result of the settlement and arrangements among O&G, Keystone and ACE, the result of which was ACE's claim that its coverage is exhausted. We find it interesting that O&G would facilitate the exhaustion of the ACE policy (the only Keystone policy that contains a defense obligation), when it had a multi-million dollar claim against Keystone." <u>O&G never denied or otherwise responded to this statement</u>. Moreover, I stated in this letter: "[b]ased on limited statements made to us, it is our understanding that O&G made a payment to Keystone as an inducement to Keystone to enter into that settlement." <u>O&G also never denied or responded to this statement</u>. In this letter, I again asked for documents, including but not limited to, "copies of all communications involving ACE, O&G and Keystone concerning the O&G arbitration claim including ACE's coverage

7

position." Attached hereto as **Exhibit M** is a true and accurate copy of the letter from Neil Danaher to Finley Harckham, dated February 21, 2013.

25. On March 11, 2013, Eric Eisenberg wrote to me stating "[a]s you know, as a result of the February 7, 2010 explosion at Middletown, Connecticut (the "Explosion"), Keystone has been faced with myriad personal injury and property damage claims and has seen its operating revenues dramatically decreased. As you are also aware, <u>the only insurance carrier which acknowledged any duty to defend Keystone with respect to any of the claims since the Allied-World CCIP policy was exhausted was ACE…</u>" (Emphasis added.). Keystone also refused North River's request for a copy of the settlement document between O&G and Keystone. Attached hereto as **Exhibit N** is a true and accurate copy of the letter from Eric Eisenberg to Neil Danaher, dated March 11, 2013.

26. On April 3, 2013, Sheila Burke, CEO of Keystone, wrote to me informing me of a recently filed bodily injury claim arising out of the Kleen Energy explosion. In her letter, she states that "<u>[t]he insurance available to defend Keystone against the Claims under the CCIP program in place for the Kleen Energy Project, as well as the insurance provided to Keystone by an ACE general liability policy and an Everest National Insurance Policy has been exhausted. Keystone does not have the financial means to defend the Claims</u>. Keystone hereby calls upon North River to indemnify and defend Keystone with regard to the Claims." (Emphasis added.). Attached hereto as **Exhibit O** is a true and accurate copy of the letter from Sheila Burke to Neil Danaher, dated April 3, 2013.

27. On October 28, 2013, after North River had filed its First Amended Complaint for Declaratory Judgment [Doc. No. 23], counsel for O&G stated to counsel for North River in a telephone conversation that O&G and Keystone settled the remainder of the O&G Arbitration

8

Claim at or about the time of the ACE settlement agreement. This is the first time that O&G (or Keystone) ever made such a claim.

28. On October 29, 2013, Calum B. Anderson wrote to Finley Harckham requesting a copy of the settlement agreement purportedly made during the first week of June, 2012 between O&G and Keystone. Attached hereto as **Exhibit P** is a true and accurate copy of the letter from Calum B. Anderson to Finley Harckham, dated October 29, 2013.

29. Finley Harckham never responded to Calum Anderson's request in the letter dated October 29, 2013.

30. On October 30, 2013, Calum B. Anderson wrote to Joel Lewin of Hinckley Allen, counsel for Keystone, and requested the letter agreement purportedly made during the first week of June, 2012 between O&G and Keystone. Attached hereto as **Exhibit Q** is a true and accurate copy of the letter from Calum B. Anderson to Joel Lewin, dated October 30, 2013.

31. Joel Lewin never responded to Calum Anderson's request of October 30, 2013.

Signed under the pains and penalties of perjury this 24th day of January, 2014.

_____
R. Cornelius Danaher, Jr.

_____
Notary Public

Michelle E. Reno
NOTARY PUBLIC
State of Connecticut
My Commission Expires August 31, 2016

## CERTIFICATION

     This is to certify that on the above date, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing was sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                            R. Cornelius Danaher, Jr.