UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE NORTH RIVER INSURANCE COMPANY,<br><br>                              Plaintiff,<br>       v.<br><br>O&G INDUSTRIES, INC., and KEYSTONE CONSTRUCTION AND MAINTENANCE SERVICES, INC.,<br><br>                              Defendants. | Case 3:13-cv-00589-RNC<br><br><br>February 3, 2014 |

**O&G INDUSTRIES, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Finley Harckham (ct26403)
Dennis J. Artese (ct28071)
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 278-1000
fharckham@andersonkill.com
dartese@andersonkill.com

*Attorneys for Defendant
O&G Industries, Inc.*

## INTRODUCTION

Defendant O&G Industries, Inc. ("O&G"), through its undersigned counsel, respectfully submits this Reply Memorandum of Law in Further Support of its Motion For Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure (the "Sanctions Motion") (Docket Nos. 50-54) against plaintiff The North River Insurance Company ("North River").[1]

North River's pursuit of this frivolous action against O&G warrants the imposition of sanctions. North River has dragged O&G, an entity with which it has no business relationship, into litigation asserting that O&G's actions in settling its claims with Keystone were tortious, wrongful, and somehow have damaged North River. But North River has not alleged that O&G's motive was to interfere with North River's rights. Instead, North River claims that "O&G's motive in causing Keystone's participation in the Ace Settlement Agreement was to leave Keystone defenseless against the remainder of the O&G Arbitration Claim." Am. Comp. at ¶ 119. This alleged motive not only is false, but it is irrelevant to North River's claims.

In the absence of allegations that O&G's motive was to cause harm to, and interfere with the contract of, North River, the tortious interference claim against O&G is not viable. Equally defective is the CUTPA claim: first, it is premised upon the invalid tortious interference claim, and second, North River lacks standing to assert a CUTPA violation against O&G, with whom it has no relationship. Also, North River made no payments to settle O&G's claims, received a release from liability in connection therewith, and has made no payments to date under Keystone's second-level excess policy for any Incident-related claims. Accordingly, it has suffered no harm. The claims against O&G are meritless and their pursuit has depleted valuable resources and wasted time. North River's refusal to withdraw its claims is sanctionable.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in O&G's Memorandum of Law in Support of its Sanctions Motion (the "Sanctions Memo") (Docket No. 54).

nydocs1-1026690.1

## ARGUMENT

### I. NORTH RIVER'S THEORY OF THE "FACTS" IS IRRELEVANT AND FALSE

In Plaintiff's Objection to O&G's Sanctions Motion (the "Objection") (Docket No. 69), North River submits multiple exhibits in an effort to divert attention away from the glaring and incurable deficiencies fatal to its claims against O&G, including, among others, the lack of (i) motive to harm North River, (ii) standing to assert a CUTPA claim against O&G, (iii) any ascertainable loss suffered by North River, (iv) interference in the Keystone-North River contract, and (v) any wrongful conduct by O&G.

The exhibits upon which North River relies are meant to substantiate North River's theory of O&G's alleged illicit motive, namely that O&G coerced Keystone into the ACE Settlement in order to leave Keystone without a means of defending itself against any remaining O&G Arbitration Claims (the "Alleged Motive"). Am. Comp. at ¶ 119, Objection at 20. That theory of illicit motive, however, is completely irrelevant to North River's tortious interference and CUTPA claims against O&G. North River's theory, at best, alleges that O&G's intent was to interfere with the contractual relationship between Keystone and ACE. But such motivation (even if not entirely baseless) is completely irrelevant. The only motivation relevant in this case is whether O&G acted with an intent to harm North River. *See, e.g., ZeeBaaS, LLC v. Koelewyn*, Civ. Act. No. 3:11cv11(VLB), 2012 WL 2327693, at *6 (D. Conn. Jun. 19, 2012) (holding that tortious interference claim requires allegation that, in interfering with contractual relations, defendant's intent was to harm plaintiff); *see also* Point II.B., *infra*. O&G possessed no such motive, and North River never has alleged anything to the contrary. This invalidates both North River's tortious interference claim and CUTPA claim against O&G, since, by North River's own admission, the latter claim is premised on the former claim. Objection at 30.

Aside from the fact that the Alleged Motive is completely irrelevant, it is also

false and lends no good faith basis to North River's claims. The exhibits submitted by North River address only the narrow issue of whether North River, when it filed its Amended Complaint, definitively knew that Keystone and O&G had resolved the entirety of their dispute at the time Keystone released the defense costs coverage under the ACE Policy. The exhibits do nothing more than make the Alleged Motive not entirely impossible, but that is not sufficient to avoid Rule 11 sanctions. *See, e.g., O'Malley v. N.Y.C. Transit Authority*, 896 F.2d 704 (2d Cir. 1990) (remanding for imposition of sanctions where plaintiff's claim was baseless and not the product of a "reasonable inquiry into the viability of the pleading").

In the Objection, North River now claims, for the <u>first time</u>, that its Alleged Motive theory is supported by statements made by Keystone's counsel in correspondence sent to North River and in a pleading filed by O&G against Everest. Objection at 3-14. North River's manufactured, "after-the-fact" argument is wrong.[2]

Even if it is assumed that North River, at the time it filed its Amended Complaint, did have a good faith basis to advance its Alleged Motive theory,[3] it now has been advised by O&G of the falsity of its contentions on <u>three separate occasions</u> since the Amended Complaint was filed: (i) during the meet and confer telephone conference of October 28, 2013; (ii) in the Safe Harbor Letter, served on November 15, 2013; and (iii) in O&G's Sanctions Motion, filed December 23, 2013. But at each turn, North River has refused to withdraw its claims or correct

---

[2] North River references O&G's Second Amended Complaint against Everest, filed on January 8, 2013. *See* Objection at 8. The Second Amended Complaint states (at ¶2) that O&G and Keystone had reached a settlement by which Keystone assigned its rights under the Everest Policy to O&G. To the extent that North River's reference to the Second Amended Complaint is meant to imply that, as late as January 8, 2013, North River still was not aware that O&G and Keystone had settled the remainder of the O&G Arbitration Claims, that suggestion is false. *See* Objection at 8. O&G's initial Complaint against Everest, filed on November 28, 2012, also indicates (at ¶ 2) that O&G and Keystone had settled its claims. Harckham Reply Decl. at Ex. B.

[3] Notably, North River received a copy of the Westchester Surplus Lines Policy on July 22, 2011. *See* Affidavit of Finley Harckham at ¶ 6 (Docket No. 52). Thus, North River should have known, at the time it filed its Amended Complaint, that the ACE Policy was not the only policy purchased by Keystone that provided defense coverage, and that the statements it made to the contrary in its Amended Complaint (*i.e.*, ¶ 60) were inaccurate and untrue.

3

its misstatements, has never before articulated its alleged good faith basis for its claims (Harckham Reply Decl. at ¶¶ 4-12), and in willful disregard, continues to assert its false accusations. There is no justification for North River's malicious actions or the wasteful depletion of resources that have had to be expended in order to address this issue.

On December 23, 2013, O&G provided sworn affidavits in connection with its Sanctions Motion, including one from Keystone's President and Chief Financial Officer, Sheila Burke (the "Burke Aff.") (Docket No. 53-2), stating that: (i) Keystone was being provided defense coverage first by an insurance broker and then by its professional liability insurer, Westchester Surplus Lines; and (ii) the remaining O&G Arbitration Claims were resolved at around the same time as, and in conjunction with, the ACE Settlement, and thus, Keystone did not need defense coverage for the remaining O&G Arbitration Claims. Burke Aff. at ¶¶ 3, 5, 6.

In its Objection, North River not only flagrantly disregards Ms. Burke's sworn statements, but devotes considerable effort to its attempt to discredit the veracity of the facts set forth in the Burke Affidavit. North River even appears to advance a new recitation of the facts, not previously articulated or alleged in its Amended Complaint, that Keystone did not have any insurance coverage defense in connection with the O&G Arbitration Claims. Objection at 14. This eleventh-hour recasting of the facts to bolster its position is endemic of North River's egregious conduct throughout the course of this litigation.

In order to fully resolve any doubts about the credibility of O&G's assertions and the frivolity of North River's contentions, O&G has obtained permission from Keystone to produce, as "Confidential" pursuant to Your Honor's Standing Protective Order, the confidential settlement agreement between O&G and Keystone on June 4, 2012 (the "Keystone Settlement Agreement"), a copy of which is attached as Exhibit "A" to the Harckham Reply Decl.

The Keystone Settlement Agreement conclusively demonstrates the veracity of Ms. Burke's sworn statements as well as O&G's previous statements to North River that its contentions were false. ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

██████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████.[4]

In sum, at best North River's evidence demonstrates that its completely irrelevant "theory" of O&G's allegedly illicit motivation was not entirely impossible, but it is clear that North River never had a good faith basis to assert it. Thus, sanctions are warranted. With the issue of O&G's allegedly illicit motive now entirely debunked, North River has no choice but to withdraw its claims against O&G, and any failure to do so additionally warrants the imposition of sanctions. Sanctions also are warranted here based on the myriad other legally frivolous positions North River has taken in its Amended Complaint.

---

[4] North River's documents do not support its bald allegations that O&G coerced Keystone into settling with Everest. ███████████████████████████████████████.

5

## II. THE TORTIOUS INTERFERENCE CLAIM IS FRIVOLOUS[5]

### A. North River Has Suffered No Actual Damage

North River never made any payment to settle the O&G Arbitration Claims. In connection with the settlements that fully resolved the O&G Arbitration Claims, North River received a release from liability. Am. Comp. at ¶ 89. To date, North River has not made a single payment in connection with any claim arising from the Incident. Thus, North River has not suffered harm.

North River has not alleged an actual loss, but instead, characterizes its harm as the exhaustion of the ACE and Everest policies "purportedly causing the North River second layer excess policy to attach." Objection at 21. This is legally insufficient. Actual harm is a required element.[6] *Estela v. Bristol Hosp., Inc.*, 2013 WL 4779574 (Conn. Super. Ct. Aug. 14, 2013) (proof of actual loss required). Thus, North River's claim fails.

### B. North River Does Not Plead And Cannot Show Improper Motive

North River argues that it sufficiently has pled improper motive by alleging that O&G's goal was to cause the improper exhaustion of the ACE Policy to render Keystone without resources to defend itself in the O&G Arbitration. Objection at 19. North River claims that this motive caused Keystone to breach its contractual obligations to North River, thus interfering with their business relationship. *Id.* Aside from the fact that this alleged illicit motive is indisputably false,[7] these contentions, at best, allege that O&G had the intent to interfere with the

---

[5] O&G incorporates by reference the legal arguments and authorities discussed in its Reply Memorandum of Law in Further Support of its Motion to Dismiss (Docket No. 57).

[6] North River's reliance upon the standard for ripeness of a declaratory judgment action is misplaced. Objection at 21. That issue is separate and distinct from the elements required to plead its tortious interference claim, which include pleading actual, concrete harm.

[7] North River acknowledgment in its Amended Comp. at ¶ 53 that, in connection with the ACE Settlement, O&G paid Keystone a sum of money ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ belies its theory that O&G was motivated to deprive Keystone of a means of defending itself against any remaining O&G Arbitration Claims.

6

nydocs1-1026690.1

contractual relationship between Keystone and ACE – not between Keystone and North River. North River lacks standing to assert a claim of interference with that relationship, and any harm North River claims to have suffered is indirect at best. Such indirect harm is not sufficient for a viable tortious interference claim, because the alleged interference must directly interfere with and harm the plaintiff's rights. *See ZeeBaaS, LLC v. Koelewyn*, 2012 WL 2327693, at *6 (dismissing for failure to allege that defendant's interference was intended to harm plaintiff).

## C. North River Does Not Plead and Cannot Show Interference

### 1. Keystone Did Not Need North River's Consent to Settle

Keystone's participation in the ACE and Everest settlements did not require North River's consent because those settlements were made within the limits of Keystone's underlying policies and never triggered the North River Policy. Thus, Keystone did not breach any obligation to obtain such consent, thereby vitiating North River's claim. *See, e.g., Cay Divers Inc. v. Raven*, 812 F.2d 866, 970 (3rd Cir. 1987) (stating that consent to settle requirements only pertain "to claims for which liability is assumed under the policy."). Even if Keystone had been obligated to obtain North River's consent to settle, North River unreasonably withheld such consent, as a matter of law, because it was not asked to make any payment in connection with the settlements. *Bertz v. Horace Mann Ins. Co.*, NO. 0115842, 1995 Conn. Super. LEXIS 1842, *17 (Conn. Super. Ct. June 15, 1995) ("insurer cannot withhold its consent to settlement when it is not prejudiced by the insured's settlement with the tortfeasor, or similarly when the refusal to consent to settlement would violate the 'obligation of good-faith and fair dealing.'").

### 2. O&G Did Not Control and Coerce ACE and Everest

North River's tortious interference claim is predicated upon the assumption that O&G controlled and directed ACE and Everest into participating in the improper settlement of the O&G Arbitration Claims. Without the participation of ACE and Everest, there would have

7

nydocs1-1026690.1

been no settlement agreements to cause Keystone allegedly to breach its obligations under the North River Policy. North River has not alleged – and indeed cannot allege – that O&G caused ACE and Everest to participate in these allegedly improper settlements.

Attempting to cure this deficiency, North River argues that ACE had its own improper motive in settling,[8] thereby purportedly vitiating any need to allege that O&G controlled and directed ACE and Everest improperly to settle. Objection at 17-19. But this suggestion was not alleged in the Amended Complaint. Moreover, North River does not and cannot offer any allegedly illicit motivation on the part of Everest in settling for the $10 million of its policy limits. There was no duty to defend under the Everest Policy, so Everest had no incentive to pay its full policy limits for claims North River has characterized as baseless.[9]

## III. THE CUTPA CLAIM AGAINST O&G FAILS AS A MATTER OF LAW

### A. North River Had No Relationship with O&G, And Has No Standing

In an effort to demonstrate that it has standing to bring its CUPTA claim, North River argues that O&G has injected itself into North River's commercial relationship with Keystone by allegedly causing Keystone to breach its policy obligations. Objection at 24. However, CUPTA requires a "direct" business relationship between the plaintiff and defendant. *Golden v. Hamer*, No. FST-CV-0850008396S, 2009 WL 3086417, at *8 (Conn. Super. Ct. Aug. 25, 2008) (dismissing CUTPA claim because adjoining landowners lacked such a relationship even where defendant's activities had damaged plaintiff's land). North River has cited no case in

---

[8] In so arguing, North River suggests that ACE breached its duty of good faith and fair dealing. Not only is this entirely beside the point, but North River lacks standing to raise it – that duty runs exclusively to Keystone. *See Carford v. Empire Fire & Marine Ins. Co.*, 94 Conn. App. 41, 45-47, 891 A.2d 55, 58-59 (2006) (absent subrogation, third party claimant had no standing to assert claim against insurance company for breach of duty of good faith and fair dealing for its failure to settle insurance claim – that duty was owed only to the insured and did not extend to a third party).

[9] Since the same alleged conduct underlying the tortious interference claim supports North River's CUTPA claim (Objection at 29-30), the CUTPA claim fails, as a matter of law, for the same reasons. *Caires v. JP Morgan Chase Bank, N.A.*, 880 F. Supp. 2d 288, 299 (D. Conn. 2012).

8

which a CUTPA claim was allowed to proceed in the absence of such a direct relationship. North River concedes that no direct contractual, consumer, or business relationship exists with O&G. *See* Objection at 23. Thus, North River lacks standing.

### B. North River Has Suffered No Harm

In claiming that it has suffered an ascertainable and concrete harm by virtue of the purported "attachment" of the North River Policy, North River repeats its tortious interference argument, discussed above. *See* Point II.A., *supra*. North River has not cited any legal authority to support its contention that it, as an excess insurer, was harmed by the exhaustion of underlying limits – particularly where it has not been required to make any payments.

North River's cases merely hold that loss need not be quantified to exact damages. *Id.* This misses the point. The issue is not whether North River must quantify its damages, but whether it has alleged a loss at all. North River's cases affirm that a loss must be suffered to maintain a CUTPA claim. In fact, in *Marinos v. Poirot*, 66 A.3d 860, 866-67 (Conn. 2013), the court, while acknowledging that an itemized list of damages is not required, nevertheless affirmed the dismissal of the CUTPA claim because the plaintiff had not demonstrated that she had suffered any loss. North River has suffered no loss, and the CUTPA claim should be dismissed.

### C. Insurance Claims Are Incidental to O&G's Primary Trade of Construction

North River argues that insurance-related activities are part of O&G's primary business of construction. Objection at 30. They are not, and the vague allegations in the Amended Complaint are insufficient since those allegations do not even identify O&G as engaged in the business of construction, listing instead generic references to "commercial transaction[s]" and "insurance-related [activities]" (Am. Comp. at ¶¶ 144-145).

Under North River's broad interpretation of the "primary trade or business"

9

nydocs1-1026690.1

requirement (Objection at 34), every conceivable activity that is incidental to the operation of a business would qualify as part of that business's primary trade. Such an interpretation would make the "primary trade or business" requirement meaningless, and is not supported under the rules of statutory construction. *Willow Springs Condo. Ass'n v. Seventh BRT Dev. Corp.*, 245 Conn. 1, 30-31 (Conn. 1998) (rejecting interpretation that would lead to absurd result). The CUTPA claim relates to activities that are incidental to O&G's primary business of construction, and thus cannot support a CUTPA claim.[10]

## CONCLUSION

Based on the above, O&G respectfully requests that the Court enter an Order granting the Sanctions Motion, imposing sanctions, and awarding O&G other relief as requested therein.

Respectfully submitted,

ANDERSON KILL P.C.

By: /s/ *Finley Harckham*
Finley Harckham (ct26403)
Dennis J. Artese (ct28071)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 278-1000
fharckham@andersonkill.com
dartese@andersonkill.com

*Attorneys for Defendant*
*O&G Industries, Inc.*

---

[10] North River attempts to apply the standard set forth in *Passaro-Henry v. Allstate Ins. Co.*, Civ. No. 3:10-cv-450 (JCH), 2010 WL 5174405, at *9-*10 (D. Conn. Dec. 15, 2010), regarding what constitutes part of a business' primary trade or commerce. But that case involved a CUTPA violation based on the insurer's filing of multiple frivolous lawsuits. The standard applied therein, the "sham litigation doctrine," under which it is proper to look to the subject matter of the underlying (frivolous) litigations to determine whether they are related to the defendant's primary business, does not apply to North River's CUTPA claim that is not based on the filing of frivolous suits.

## CERTIFICATION

This is to certify that on the above date, a copy of the foregoing Defendant O&G Industries, Inc.'s Reply Memorandum of Law in Further Support of its Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure was filed electronically and served by mail to anyone unable to accept electronic filing.  Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                                                  /s/ Dennis J. Artese
                                                                   Dennis J. Artese