UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE NORTH RIVER INSURANCE COMPANY | : CIVIL ACTION NO.: 3:13-cv-00589 (JAM) |
| v. | : |
| KEYSTONE CONSTRUCTION AND MAINTENANCE SERVICES, INC. | : FEBRUARY 8, 2016 |

## NORTH RIVER'S RESPONSE TO AFFIDAVITS OF
## SHEILA BURKE AND JOEL LEWIN

The North River Insurance Company ("North River") respectfully submits its response to the Affidavits of Sheila Burke [Doc. 182] and Joel Lewin [Doc. 188] filed on behalf of Keystone Construction and Maintenance Services, Inc. ("Keystone").

North River submits that the Sheila Burke[1] and Joel Lewin[2] affidavits are conclusory and provide the Court no factual basis by which to conclude that Keystone is financially incapable of adequately protecting the interests of the Underlying Plaintiffs. The affidavits are devoid of admissible evidence as to Keystone's assets, liabilities or income. Further, certain statements made in the Burke Affidavit contradict her sworn deposition testimony given in the bodily injury litigation and are incomplete, if not misleading as to Keystone's capability. Lastly, Keystone's conduct prior to the January 27, 2016 hearing on the Motion to Intervene indicates that Keystone is aggressively litigating this declaratory judgment action. In the absence of competent evidence that Keystone is incapable of adequately representing the interests of the Underlying Plaintiffs,

---

[1] Sheila Burke is the President and CEO of Keystone.

[2] Joel Lewin is a Partner in the law firm of Hinckley, Allen, Snyder and counsel for Keystone.

1126044

the Underlying Plaintiffs have failed to meet their burden of establishing a right to intervene.[3]

I. **PROCEDURAL BACKGROUND**

The timing and manner in which the Burke and Lewin affidavits came to be filed is significant; as an afterthought following all of the briefing on the Underlying Plaintiffs' Motion to Intervene.

At no point prior to the January 27, 2016 hearing did Keystone or the Underlying Plaintiffs suggest that Keystone was financially unable to litigate this declaratory judgment action. It is axiomatic that "adequacy of representation" is a necessary factor on a motion for intervention, yet neither Keystone nor the Underlying Plaintiffs raised the issue in any memorandum or affidavit. Even at the commencement of the January 27, 2016 hearing, Keystone's counsel informed the Court that he did not intend to participate actively.[4] However, during the hearing, counsel for the Underlying Plaintiffs indicated that Keystone had only one employee, suggesting that Keystone was not capable of adequately protecting his clients' interests. Keystone's counsel offered that he had not billed Keystone for services rendered on this case for two years. Insofar as neither the Underlying Plaintiffs nor Keystone had submitted

---

[3] Cintron v. Vaughn, 2000 WL 620427 (D. Conn.) (Burns, J.) at *4 ("In order to intervene as of right under Fed. R. Civ. P. 24(a)(2), "An *applicant bears the burden* on each of these four elements: (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action'.") (quoting United States v. City of New York, 198 F. 3d 360, 364 (2d. Cir.1999)). (Emphasis added.)

[4] See Transcript from Motion Hearing dated January 27, 2016:

> **The Court:** My understanding is that Keystone is basically attending for purposes of listening to today's proceeding and does not intend to participate actively in the argument today; is that right?
>
> **Mr. Lewin:** That is correct.

admissible evidence supporting the inadequacy of representation claim, the Court ordered that Keystone had until February 3, 2016 to submit affidavits concerning Keystone's financial status.

On February 3, 2016, Keystone submitted the affidavits of Sheila Burke and Joel Lewin.

## II. ARGUMENT

### A. The Burke and Lewin Affidavits are Conclusory and Devoid of Facts Regarding the Financial Status of Keystone and Sheila Burke.

The Burke and Lewin affidavits are conclusory and devoid of facts regarding the financial status of either Keystone or Sheila Burke. The affidavits provide the Court no factual basis by which to conclude that Keystone is financially incapable of protecting its interests or those of the Underlying Plaintiffs. Sherwin-Williams Co. v. Suraci Metal Finishing, LLC, 2014 WL 783674 (Conn. Super.) ("'It is especially appropriate to hold an affidavit submitted by a moving party to a stringent standard. Evans Products Co. v. Clinton Building Supply, Inc., 174 Conn. 512, 516, 391 A.2d 157 (1978). Moreover, 'conclusory statements…in an affidavit…do not constitute evidence of disputed material facts'. Gupta v. New Britain General Hospital, 239 Conn. 574, 583, 687 A.3d 111 (1996). 'Purely conclusory statements in an affidavit provide little input, if any, into that information which a neutral and detached judicial authority can properly use….' State v. Ross, 194, Conn. 447, 468, 481 A.2d 730 (1984).") Keystone failed to provide the Court an iota of information regarding Keystone's or Sheila Burke's assets, liabilities or income.

### B. Statements Made in the Burke Affidavit Concerning Keystone are Contradicted by Her Sworn Deposition Testimony.

Sheila Burke, in her Affidavit, averred that:

> 15. Keystone ceased operating as an ongoing concern in 2013. It laid off its last field employee in *May 2013* and last office employee in *September 2013*.

- 3 -

1126044

Burke Affidavit, ¶ 15 [Doc. 182] (Emphasis added).

However, on August 12, 2013, at the deposition of Sheila Burke in the underlying bodily injury litigation, she testified that, "Keystone is operational" and, in fact, was at work on some significant projects.

> Q. Now, can you tell me, Keystone today, is Keystone still in operation?
>
> A. Keystone is in operation.
>
> Q. And tell me about its operations today.
>
> A. We have downsized dramatically. My primary focus now is work, wastewater treatment plants, public works in the Boston area, primarily working with the millwright and the ironworker.
>
> Q. So you take on - - does Keystone usually get act as a subcontractor or a general contractor?
>
> A. We've acted as both. At the moment any work that I have is as a subcontractor.
>
> \* \* \* \*
>
> Q. And the work being done today by Keystone, can you describe the type of work being done by Keystone? Just generally, what sorts of things are you doing?
>
> A. We've been installing pumps at the Deer Island Wastewater Treatment Plant for a Walsh construction of Illinois. We're about to erect a wind turbine for the city of Lynn, Massachusetts as a subcontractor to SED which is a - - they specialize in wind power.
>
> Q. So would you describe the work that Keystone does is generally you work with metal, pipe fitting, metal construction projects, steel construction projects and…
>
> A. Yes. The tools of the trade are similar. Erecting steel,

erecting machinery, bolting, welding.[5]

While Burke's affidavit states that Keystone was not operative in 2013, her deposition testimony indicates that as of August 2013, while Keystone had downsized its operations, it was still working on multiple, significant projects. The Burke affidavit does not provide a complete or accurate picture of Keystone.

### C. Evidence that the Interests of the Underlying Plaintiffs Are Adequately Protected by Another Party.

As previously indicated, prior to the January 27, 2016 hearing on the Motion to Intervene, Keystone had never indicated that it was unable to protect its interests or those of the Underlying Plaintiffs in this declaratory judgment action. Indeed, for almost three (3) years, Keystone has vigorously litigated this matter: it briefed and argued a Motion to Dismiss [Doc. 111], briefed and argued a Motion to Unseal the Keystone Settlement Agreement [Doc. 121], engaged in discovery including the production of thousands of pages of documents and obtaining thousands of pages of documents from North River. Keystone's President, Sheila Burke, testified on behalf of Keystone at a deposition taken pursuant to Rule 30(b)(6) and Keystone noticed the Rule 30(b)(6) deposition of North River. As recently as January 7, 2016, Keystone issued a subpoena and Rule 30(b)(6) deposition of Everest Insurance Company in New Jersey.

Insofar as no one had ever raised Keystone's alleged inability to protect itself, that issue has never been the subject of discovery. However, in response to Sheila Burke's affidavit, North River has been able to discover additional information, not included in the affidavits of Burke or Lewin.

---

[5] Transcript from Deposition of Sheila Burke taken on August 12, 2013 in Thompson, et al v. O&G Industries, Inc., et al, Superior Court, Judicial District of Hartford, Civil Action No. (X04) HHD-CV-10-8034672-S at pages 10-12 (Exhibit A.)

- 5 -

First, it is useful for the Court to understand the nature of Keystone's business. Keystone describes itself as "a union mechanical contractor working primarily as a subcontractor, providing building and maintenance services, including but not limited to installation of power and process piping systems, rigging and erection services, installation of gas, steam and hydro-turbines, installation of balance of plant piping, structural steel erection and miscellaneous construction activities. Keystone also provides maintenance services to New England area power plants".[6]

Keystone was awarded three (3) subcontracts on the Kleen Energy Power Plant Project: (a) the Access Road Utilities- Fuel Oil Lines Project; (b) the Underground Utility Piping Project; and (c) the Above Ground Piping and Mechanical Erection Project. The general contractor, O&G Industries, Inc. ("O&G"), awarded additional work to Keystone by means of numerous change orders. At the time of the explosion, Keystone's subcontract with O&G reached $28,657,644.[7] Following the explosion, O&G awarded Keystone contract(s) to complete the project. North River does not possess information concerning how much Keystone was paid for that work.

Besides the Kleen Energy Power Plant Project, Keystone has participated in other large construction projects including the Yale University Sterling Power Plant Co-Generation Project; the University of Massachusetts Central Heating Power Plant; the Millennium Power Project; the Central Artery/Tunnel Ventilation System; the Mystic Station Power Plant; the Fore River Station Power Plant; and the Medical Area Total Energy Plant.[8]

---

[6] Letter dated April 6, 2011 from Richard D. Wayne, Hinckley, Allen, Snyder, LLP (counsel for Keystone) to Ralph Minichiello, Office of the Solicitor, U.S. Department of Labor, at p. 5. (Excerpts from the letter are attached marked as Exhibit B.)

[7] Id. at pp. 15-16.

[8] Id. at p. 6.

In 2009, Keystone's volume of business was $35,000,000.[9]

In 2010, Keystone's volume of business was $20,000,000.[10]

Keystone has an on-going arbitration against a business partner, Tucker Mechanical, arising out of their work on the Kleen Energy Power Plant. In Phase 2 of the arbitration, the arbitrator awarded Keystone over $300,000 plus approximately $100,000 of interest.[11] While Joel Lewin, in his affidavit, stated that he has not billed Keystone for services rendered in this declaratory judgment litigation, he apparently does so in the Tucker Mechanical arbitration matter.

> Q. Back to the Tucker Mechanical arbitration, who's representing Keystone in that?
>
> A. Joel.
>
> Q. And who is funding that?
>
> A. I am.
>
> Q. Keystone?
>
> A. Keystone.[12]

Burke in her affidavit, made certain statements concerning her personal financial situation. In response, North River submits evidence concerning her various business activities.

---

[9] Id.

[10] Id.

[11] Transcript from Deposition of Sheila Burke taken on December 3, 2015 in The North River Insurance Company v. O&G Industries, Inc., and Keystone Construction and Maintenance Services, Inc., U.S. District Court, District of Connecticut, Civil Action No. 3:13-CV-00589 (JAM) at pp. 119-120 (Exhibit C).

[12] Id. at p. 133.

1126044

Burke is the president and director of the following companies:

1. Keystone Construction & Maintenance Services, Inc. (Organized 8/4/1987);[13]

2. Keystone Engineering and Construction Corp. (Organized 2/6/1989);[14]

3. KEC Services Inc. (Organized 4/21/2004);[15]

4. Jackie B. Properties, LLC (Organized 8/5/2005) (Manager);[16] and

5. MLB Development Corporation (Organized 9/7/2011).[17]

By all accounts, Sheila Burke is a woman of considerable abilities and earnings capability.

## III. **CONCLUSION**

North River respectfully submits that the Underlying Plaintiffs' Motion to Intervene should be denied because they cannot meet their burden of establishing that their interest in this litigation is not protected adequately by Keystone. Keystone has aggressively litigated this action for almost three (3) years and has evidenced no lack of resources or competence. The affidavits

---

[13] Secretary of the Commonwealth of Massachusetts Business Entity Summary for Keystone Construction and Maintenance Services, Inc., attached hereto marked Exhibit D.

[14] Secretary of the Commonwealth of Massachusetts Business Entity Summary for Keystone Engineering and Construction Corp., attached hereto marked Exhibit E.

[15] Secretary of the Commonwealth of Massachusetts Business Entity Summary for KEC Services, Inc., attached hereto marked Exhibit F.

[16] Secretary of the Commonwealth of Massachusetts Business Entity Summary for Jackie B. Properties, LLC., attached hereto marked Exhibit G.

[17] Secretary of the Commonwealth of Massachusetts Business Entity Summary for MLB Development Corp., attached hereto marked Exhibit H.

submitted by Sheila Burke and Joel Lewin are conclusory and provide no factual basis to support Underlying Plaintiffs' position. Indeed, Keystone's history of work on multi-million power plant projects strongly suggests otherwise. The affidavits are completely devoid of information concerning Keystone's assets, liabilities or income. Lastly, the sworn deposition testimony of Sheila Burke in the bodily injury litigation is at odds with statements made in her affidavit. For all of these reasons, the Motion to Intervene should be denied.

THE NORTH RIVER INSURANCE COMPANY

BY /s/ R. Cornelius Danaher, Jr.
R. Cornelius Danaher, Jr.(ct5350)
Calum B. Anderson (ct07611)
DANAHERLAGNESE, PC
21 Oak Street
Hartford, CT 06106
Tel.: (860) 247-3666
ndanaher@danaherlagnese.com
canderson@danaherlagnese.com

1126044

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2016, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system of by mail as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ R. Cornelius Danaher, Jr.
R. Cornelius Danaher, Jr. (ct5350)

