UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE NORTH RIVER INSURANCE COMPANY | : <br> : CIVIL ACTION NO.: 3:13-cv-00589-JAM <br> : |
| v. | : <br> : |
| O&G INDUSTRIES, INC. KEYSTONE CONSTRUCTION AND MAINTENANCE SERVICES, INC. | : <br> : <br> : FEBRUARY 15, 2016 |

## NORTH RIVER'S RESPONSE TO THE PROPOSED AMENDED COUNTERCLAIM COMPLAINT

The North River Insurance Company ("North River") respectfully submits its response to the "Proposed Amended Counterclaim Complaint" [Doc. No. 185] filed by the bodily injury and property damage plaintiffs (the "Proposed Intervenors") in support of their Motion to Intervene [Doc. No. 153].[1]

North River submits that the Motion to Intervene should be denied because the claims that the Proposed Intervenors seek to add have no *commonality* with the claims and issues presented in the existing litigation. The Potential Intervenors may only join issue on a matter that has been brought before the court by another party and may not expand the proceedings. They must "take the pleadings in a case as they find them" and may not by intervention "radically alter the scope to create a much different suit" or "inject collateral issues into an existing action." Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale

---

[1] North River's response to the Proposed Amended Counterclaim Complaint is directed toward failure to meet the requirements of Fed. R. Civ. P. 24. This is not the time to address whether the Proposed Amended Counterclaim Complaint can withstand a motion to dismiss. If the Motion to Intervene is granted, and the Proposed Amended Counterclaim Complaint is actually filed as currently framed, North River will file a motion to dismiss.

/1127015.1

Electric Co., 922 F.2d 92, 97 (2d Cir. 1990).  See also Padro v. Astrue, 2013 WL 1192824, *4 (E.D.N.Y.); Federal Housing Finance Agency v. HSBC North America Holdings, Inc., 2014 WL 4188079, at *4 (S.D.N.Y.); United States v. State of New York, 99 F.R.D. 130, 134 (N.D.N.Y.).[2]  In addition, the granting of the improper Motion to Intervene would prejudice North River by continuing to deprive it of the relief that it first requested almost three years ago – i.e. judicial direction as to the impact of Keystone's breaches of conditions in the North River policy and breaches of Keystone's duties of good faith and fair dealing.

I. **ARGUMENT**

    A. **The Proposed Amended Counterclaim Complaint Impermissibly Seeks To Expand The Proceedings And Interject Issues Outside The Scope Of The Existing Litigation**

The Motion to Intervene should be denied because the Proposed Intervenors impermissibly seek to expand the proceedings by interjecting new issues outside the scope of the existing litigation.   This is clearly evident by comparing the claims and issues presented in the Proposed Amended Counterclaim Complaint against those presented in the Second Amended Complaint For Declaratory Judgment.

The claims made and issues presented in the Proposed Amended Counterclaim Complaint, and the claims made and issues presented in the Second Amended Complaint for Declaratory Judgment, have no commonality.  If one were to think of the claims and issues presented in the respective pleadings in terms of a Venn Diagram, there would be no overlap.

---

[2] Copies of unreported cases are attached hereto at Exhibit A.

The claims made and issues presented in the Second Amended Complaint for Declaratory Judgment involve solely the conduct of Keystone and whether such conduct constitutes material breaches of the North River Policy and Keystone's duties of good faith and fair dealing.

On the other hand, the claims made and issues presented in the Proposed Amended Counterclaim Complaint involve solely the conduct of North River and whether such conduct constitutes a breach of obligations that North River owes to Keystone.

Courts do not permit intervenors to expand the proceedings and interject issues outside the scope of the existing litigation.  Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co., 922 F.2d 92, 97 (2d Cir. 1990) ("[I]f VDPS's motion were granted, the present case would be changed radically . . . .  Intervenors must take the pleadings in a case as they find them.  (citations omitted) WEC's complaint defined the general scope of the action and VDPS cannot now by intervention radically alter that scope to create a much different suit. . . .  [T]he rule is not intended to allow for the creation of whole new suits by intervenors."); United States v. State of New York, 99 F.R.D. 130, 134 (N.D.N.Y. 1983) (Denying intervention because "the issue upon which the intervenors herein seek relief is separate and distinct from the particular issues" presented in the existing litigation.)  The District Court in Nebraska relied upon several administrative law decisions in concluding that intervention was not proper under Rule 24:

> An intervenor may not introduce issues that are outside the scope of the issues in the main suit.  Thompson v. Deal, 49 F. Supp. 366 (D.D.C. 1943).  Intervenors may only argue issues that have been raised by the principal parties.  Nat'l Ass'n of Regulatory Utility Com'rs v. Interstate Commerce Commission, 41 F.3d 721, 729 (D.C. Cir. 1994).  An intervening party may join issues only on a matter that has

> been brought before the court by another party. <u>Illinois Bell Tel. Co. v. FCC</u>, 911 F.2d 776, 786 (D.D.C. 1990). Intervention is not proper if it expands the scope and costs of litigation. <u>Marvel Entertainment Group, Inc. v. Hawaiian Triatholon Corp.</u>, 132 F.R.D. 143, 146 (S.D.N.Y. 1990) Intervention is restricted to the scope of charges filed with the EEOC. <u>EEOC v. American Tel. & Tel. Co.</u>, 365 F. Supp. 1105, 1125 (E.D. Pa. 1973). An intervening party is admitted to the proceeding as it stands, and in respect to the pending issues, but is not permitted to enlarge those issues. <u>Vinson v. Washington Gas Light Co.</u>, 321 U.S. 489, 498, 64 S. Ct. 731, 88 L. Ed. 883 (1944).

<u>Equal Employment Opportunity Commission v. Woodmen of the World Life Insurance Society</u>, 330 F. Supp. 2d 1049, 1054-55 (D. Neb. 2004). <u>Federal Housing Finance Agency v. HSBC North America Holdings, Inc.</u>, 2014 WL 4188079 at *4 (S.D.N.Y.) ("Intervenors must take the pleadings at they find them; Rule 24(a)(2) is not intended to allow for the creation of whole new suits by the intervenors.") <u>Padro v. Astrue</u>, 2013 WL 1192824 at *4 (E.D.N.Y.); <u>In re NASDAQ Market-Makers Antitrust Litigation</u>, 187 F.R.D. 465, 491 (S.D.N.Y. 1998) ("Potential intervenors . . . must take the pleadings as they find them; they may not by intervention radically alter the scope to create a much different suit or interject collateral issues into an existing action.")

It is clear that the Proposed Amended Counterclaim Complaint is in direct conflict with the Second Circuit's holding in <u>Washington Electric Cooperative</u> and the cases following it.

**B.    Granting The Motion To Intervene Would Prejudice North River.**

The granting of the Motion to Intervene would prejudice North River by unduly delaying the proceedings. If the Motion to Intervene is granted, North River and/or Keystone would have to file responsive pleadings. The Proposed Intervenors have indicated that

- 4 -

they intend to conduct discovery regarding alleged bad faith on the part of North River, which has absolutely no basis. All of these activities take time and will, no doubt, involve motion practice. Expert witnesses would need to be retained, they would need to familiarize themselves with relevant facts, form opinions, write their disclosures and be deposed. Further, North River and Keystone had agreed to a bench trial and have advised the Court that they intend to submit detailed stipulations of fact to conduct an efficient trial.[3] However, the Proposed Intervenors have indicated that they will demand a trial by jury which will necessarily delay the start of trial and result in a more costly and less efficient presentation of evidence.

North River would be prejudiced by the continuing uncertainty concerning its coverage obligations, if any, to Keystone. In that regard, it is important to understand the events leading up to this situation.

Keystone never presented to North River a demand for coverage with respect to the bodily injury claims. Notwithstanding Keystone's omission, upon learning of the claims, North River informed Keystone that it would indemnify Keystone for such claims after proper exhaustion of the underlying insurance.[4] North River never denied coverage for the bodily injury claims. In fact, as early as May 2012, North River participated in a two day mediation of the bodily injury claims in New York City. However, at that mediation, Keystone without the consent of North River, began engaging in a series of settlement discussions of an undefended,

---

[3]In that regard, North River served on Keystone a Request for Admissions. Based upon Keystone's response, North River intends to move for summary judgment.

[4]Keystone's response to Request for Admission Nos. 33, 34 and 44. Attached hereto marked Exhibit B is a genuine copy of Keystone's Response to The North River Insurance Company's First Request for Admissions Directed to Keystone.

unproven and uncovered liquidated delay damage claim by the general contractor.[5] In fact, Keystone hid the fact that it had settled the general contactor's liquidated delay damage claim from June 4, 2012 to November 18, 2012.[6] Keystone's settlements resulted in the inappropriate

---

[5]Keystone has admitted that:

(a) "Keystone never requested North River's written consent that it be a party to the ACE Settlement Agreement" (Keystone's response to Request for Admission No. 54);

(b) Keystone never obtained North River's written consent that it be a party to the ACE Settlement Agreement" (Keystone's response to Request for Admission No. 55);

(c) "Keystone never requested nor obtained North River's consent that it 'release and forever discharge ACE American from any and all claims, rights and/or causes of action that Keystone . . . may have against ACE American under or in connection with the Policy arising out of, related to, or in connection with (1) the Explosion and (2) the facts, claims and/or causes of action underlying the Arbitration" (Keystone's response to Request for Admission No. 58);

(d) "Keystone never requested North River's written consent that it enter into the O&G Settlement Agreement" (Keystone's response to Request for Admission No. 59);

(e) Keystone never obtained North River's written consent that it enter into the O&G Settlement Agreement." (Keystone's response to Request for Admission No. 60);

(f) "Keystone never requested North River's written consent that it release O&G from claims relating in any way to the Construction Project or the Explosion, as those terms are defined in the O&G Settlement Agreement." (Keystone's response to Request for Admission No. 61.)

[6]In fact, after Keystone and O&G had entered into the secret June 4, 2012 settlement, on June 27, 2012 North River wrote to Keystone as follows:

> Neither ACE nor Keystone has provided North River information regarding the status of the O&G arbitration. Please (1) provide us with contact information of the law firm defending Keystone; (2) provide us a summary of what has occurred to date; and (3) provide us with copies of all documentation that has surfaced in the arbitration.

and unjustified payment of the underlying insurers' policy limits.  Recognizing that Keystone's multiple breaches of the Conditions in the North River policy were creating serious questions concerning coverage, on April 24, 2013, North River commenced this declaratory judgment action.  [Doc. No. 1.]

North River commenced this declaratory judgment precisely to obtain a court determination as to whether as a result of Keystone's breaches of conditions of the North River policy and of Keystone's obligation of good faith and fair dealing the North River policy was void.  North River filed the action promptly upon learning of the exhaustion of the first layer excess insurer's policy limits which, if justified, could cause the North River second layer excess policy to attach.  However, it appeared to North River (and it still does) that the first layer excess policy had been exhausted on the settlement of an undefended, unproven and uncovered liquidated delay damage claim.  Faced with the uncertainty created by Keystone's repeated and multiple breaches of the Policy, North River did what the Second Circuit and other Courts recommend in such situations: commence a declaratory judgment action to determine whether there is coverage.  "A declaratory judgment as to coverage will terminate and afford relief from

---

By letter dated August 27, 2012, Keystone responded:

> In response to the request at the end of your denial [sic] letter of June 27, 2012, Hinckley Allen is the law firm representing Keystone in the O&G arbitration.  To date, nothing substantive has happened in the arbitration as we try to reach a settlement with O&G.

See, Keystone's response to Request for Admission No. 85.

the uncertainty that the insurers face as to coverage." Continental Casualty Company v. Coastal Savings Bank, 977 F.2d 734, 738 (2d. Cir. 1992).

> The respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement. . . . [Declaratory judgment relief was intended to avoid precisely the 'accrual of avoidable damages to one not certain of his rights.]

Id., quoting ACandS, Inc. v. Aetna Cas. and Sur. Co., 666 F.2d 819, 823 (3d Cir. 1981).

Now, after North River responsibly seeking this Court's direction concerning its obligation, if any, to indemnify Keystone, the Proposed Intervenors are claiming that North River somehow engaged in bad faith, warranting extracontractual damages.

The granting of the Motion to Intervene and the resulting delay caused thereby would mean that North River will continue to be deprived of the relief that it first requested almost three years ago – relief from the uncertainty of its rights and/or obligations under the policy.[7]

### III.  CONCLUSION

For all of the foregoing reasons, North River respectfully requests that the Court deny the Motion to Intervene.

---

[7]The extent of prejudice to existing parties requires "particular focus . . . on the posture of that litigation at the time the motion to intervene is made. . . . Such an examination reveals that the EPA has been investigating and responding to the conditions at the Site since 1984." United States v. Pitney Bowes, 25 F.3d 66, 72 (2d Cir. 1994). Similarly, in this case, North River has been investigating and responding to Keystone's claim for coverage since 2012 and seeking this Court's determination of coverage since April 1, 2013.

THE NORTH RIVER INSURANCE COMPANY

BY */s/ R. Cornelius Danaher, Jr.*
R. Cornelius Danaher, Jr. (ct5350)
Calum B. Anderson (ct07611)
DANAHERLAGNESE, PC
21 Oak Street
Hartford, CT  06106

## CERTIFICATE OF SERVICE

      I hereby certify that on February 15, 2016, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system of by mail as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

      /s/ *R. Cornelius Danaher, Jr.*
      R. Cornelius Danaher, Jr. (ct5350)