# Exhibit A

Case 3:13-cv-00589-JAM   Document 191-1   Filed 02/15/16   Page 2 of 10
Padro v. Astrue, Not Reported in F.Supp.2d (2013)
2013 WL 1192824

2013 WL 1192824
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Lorraine PADRO, et al., Plaintiffs,
v.
Michael J. ASTRUE, Commissioner of Social Security, Defendant.

No. 11–CV–1788 (CBA).
|
Feb. 7, 2013.

**Attorneys and Law Firms**

Jim Walden, Matthew J. Menendez, Oliver Michael Olanoff, Sharon Israel Grysman, Tyler Hancock Amass, Gibson, Dunn & Crutcher LLP, Ian F. Feldman, Emilia Sicilia, Urban Justice Center, New York, NY, for Plaintiffs.

Carlotta P. Wells, Washington, DC, Gail A. Matthews, United States Attorneys Office, Brooklyn, NY, for Defendant.

## REPORT AND RECOMMENDATION

ROANNE L. MANN, United States Magistrate Judge.

*1 On December 4, 2012, a motion to intervene in this case was filed by Jeffrey Delott and Troy Rosasco ("Movants"), see Motion to Intervene (Dec. 4, 2012) ("12/4/12 Motion"), Electronic Case Filing ("ECF") Docket Entry ("DE") # 98, two attorneys who regularly represent applicants for benefits under Social Security disability benefit programs ("claimants") before the Queens Office of Disability Adjudication and Review ("Queens ODAR").See id. at 1. For the reasons that follow, this Court recommends that the motion to intervene be denied.[1]

## BACKGROUND

Plaintiffs are Social Security disability claimants, who brought this action on behalf of themselves and similarly situated claimants and future claimants, against the Commissioner of Social Security ("defendant"), asserting violations of the Social Security Act, 42 U.S.C. §§ 405(b)(1), 405(g), 1383(c)(1) and 1383(c)(3); the Administrative Procedure Act, 5 U.S.C. § 556(b); and the Due Process Clause of the Fifth Amendment to the United States Constitution. See Amended Complaint (May 4, 2011) ¶¶ 295–304, DE # 4. Alleging that five Administrative Law Judges (the "five named ALJs") in the Queens ODAR harbor and exhibit anti-claimant bias, plaintiffs have sought a variety of forms of relief, including a declaratory judgment acknowledging the bias of the five named ALJs, as well as injunctive relief designed to prevent bias from tainting the claims process in the future and to provide unfairly treated claimants the opportunity for new hearings. Id. ad damnum clause ¶¶ 3–4. Following a settlement conference held before the undersigned magistrate judge last February, see Minute Entry for Proceedings Held Before Magistrate Judge Roanne L. Mann (Feb. 21, 2012) ("2/21/12 Minute Entry"), DE # 73, plaintiffs and defendant engaged in lengthy, complex settlement negotiations; at the Court's direction, the parties periodically filed reports on the progress they had made,[2] and, on January 11, 2013, they publicly filed the product of those efforts: an intricate settlement agreement reached by the parties. See Settlement Agreement (Jan. 11, 2013) ("Settlement Agreement"), DE # 112–1. The parties' motion for preliminary judicial approval of that agreement is due on February 8, 2013. See Order (Jan. 15, 2013), DE # 114.

While the parties were in the process of negotiating the final terms of their proposed settlement agreement, see 12/20/12 Minute Entry, Movants filed their application to intervene, seeking "to ensure that the interests of future disability claimants are adequately represented because the Named ALJs are not being precluded from hearing disability cases in the future ...." 12/4/12 Motion at 3. Movants are attorneys who regularly appear before the five named ALJs whose conduct is at the center of this lawsuit; in the early stage of this litigation, both Movants submitted declarations accusing the five named ALJs of bias and misconduct, see Declaration of Jeffrey D. Delott (Sept. 1, 2011) ("Delott Decl."), DE # 18; Declaration of Troy G. Rosasco (Sept. 1, 2011) ("Rosasco Decl."), DE # 20, and one of those attorneys, Mr. Delott, represents two of the named plaintiffs in connection with their individual benefits claims. See 12/4/12 Motion at 1.

*2 As justification for their intervention, Movants initially noted their objection to aspects of the proposed settlement agreement, which plaintiffs' counsel had voluntarily shared with them. See id. at 1, 2; Letter Motion to Intervene Response Letter (Dec. 11, 2012) ("12/11/12 Reply") at 1–2, DE # 102. In particular, Movants asserted that although the "goal" of the litigation was disqualification of the five named ALJs,

Case 3:13-cv-00589-JAM   Document 191-1   Filed 02/15/16   Page 3 of 10
Padro v. Astrue, Not Reported in F.Supp.2d (2013)
2013 WL 1192824

that goal would be abandoned under the proposed settlement. *See* 12/11/12 Reply at 2; *see also id.* at 3 (complaining that, "[u]nder the proposed terms of the settlement, the Named ALJs will continue to hear Social Security cases for many more years"). Movants asserted that therefore, "the interests of unnamed class members [are] no longer [ ] protected" by the named plaintiffs and their counsel. *See id* . at 2. Secondarily, Movants cited "the interests of private practice attorneys representing" future Queens claimants. *See* 12/4/12 Motion at 1; *id.* at 3. In particular, Movants argued that, "[g]iven the contingency payment structure in Social Security cases," the denial of benefits by the five named ALJs adversely impacted the "livelihoods" of private counsel who appeared before them. *See* 12/11/12 Reply at 2.

Plaintiffs and defendant filed letters opposing Movants' intervention, arguing, among other things, that the motion was untimely, that Movants' concerns could be addressed in the context of a fairness hearing relating to the proposed settlement, and that intervention would disrupt the parties' settlement negotiations, which were nearing conclusion. *See* Letter to Magistrate Mann (Dec. 10, 2012) ("Pl. 12/10/12 Opp."), DE # 99; Letter in Opposition (Dec. 11, 2012) ("Def. 12/11/12 Opp."), DE # 101.

This Court heard argument on the motion on January 3, 2013. *See generally* Minute Entry for Proceedings Held Before Magistrate Judge Roanne L. Mann (Jan. 3, 2012) ("1/3/13 Minute Order"), DE # 111. During that proceeding, Movants (who in the interim had retained their own attorney) radically altered the scope and goal of their proposed intervention. Movants no longer seek to protect the interests of future claimants or the private Social Security bar in general; rather, Movants now request permission to intervene solely on their own behalf, to protect their legal practice and income from retaliation by the five named ALJs, who, they contend, routinely reduce their attorney's fees. Claiming to have first learned on November 30, 2012, that the Settlement Agreement would not include removal of those ALJs, Movants demand a settlement provision that would prevent their cases from being heard in front of the five named ALJs. *See generally* Letter Per 1–3–13 Minute Order (Jan. 14, 2013) ("Movants' 1/14/12 Supp.") at 3, DE # 113. According to Movants' representation at oral argument, they are prepared to abandon their intervention efforts if such a provision is inserted into the settlement agreement.

*3 Plaintiffs and defendant urged the Court, at the hearing, to deny what they described as an untimely intervention motion predicated on unwarranted assumptions. Among other things, plaintiffs' counsel asserted that despite Movants' stated fear of retaliation, Movants' public criticism of the five named ALJs predated the filing of their declarations in this lawsuit; that Movants were advised as early as June 2012 that the five named ALJs would not be removed or transferred from the Queens ODAR; that the denial rates of those ALJs had recently improved, following retraining and monitoring provisions already implemented by defendant; and that the parties' complex settlement—which would be jeopardized by Movants' belated intervention—would provide robust relief to the vulnerable plaintiff-claimants and other members of the class. *See also* Letter to Magistrate Judge Mann (Jan. 25, 2013) ("Pl. 1/25/13 Supp.") at 2–3, DE # 115.

At Movants' request, the Court allowed them to supplement the record with submissions regarding the factual disputes posed by their intervention motion. *See* 1/3/13 Minute Order at 1. The Court has now received and considered those supplemental submissions. *See* Movants' 1/14/13 Supp.; Pl. 1/25/13 Supp.; Letter in Reply (Jan. 28, 2013) ("Movants' 1/28/13 Letter"), DE # 116.

## DISCUSSION

As a preliminary matter, Movants fail to cite the provision of the Federal Rules of Civil Procedure on which they rely, and they do not otherwise specify whether they are seeking to intervene as of right (pursuant to Rule 24(a)) or by permission (under Rule 24(b)).[3] For the reasons that follow, Movants are not entitled to relief on either basis.

### I. Intervention as of Right

### A. Governing Legal Principles
The purpose of Rule 24(a) of the Federal Rules of Civil Procedure—titled "Intervention"—"is to prevent a multiplicity of suits where common questions of law or fact are involved."*Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d Cir.1990). Therefore, in order to be granted intervention as of right, a proposed intervenor must: "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action."*In re Holocaust Victim Assets Litig.,* 225 F.3d 191, 197 (2d Cir.2000) (citing *Catanzano v. Wing,* 103 F.3d

Case 3:13-cv-00589-JAM   Document 191-1   Filed 02/15/16   Page 4 of 10
Padro v. Astrue, Not Reported in F.Supp.2d (2013)
2013 WL 1192824

223, 232 (2d Cir.1996)); *see* Fed.R.Civ.P. 24(a)(2). "Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application." *Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.,* 847 F.2d 1038, 1043 (2d Cir.1988) (emphasis in original) (citing *United States v. New York,* 820 F.2d 554, 556 (2d Cir.1987)); *accord In re Holocaust Victim,* 225 F.3d at 197–98.

With respect to the first factor, district courts have "broad discretion in assessing the timeliness of a motion to intervene,"*see In re Holocaust Victim,* 225 F.3d at 198; *Farmland Dairies,* 847 F.2d at 1043–44, taking into consideration "the totality of the circumstances." *In re Holocaust Victim,* 225 F.3d at 198 (citing *Farmland Dairies,* 847 F.2d at 1044). The factors relevant to the timeliness inquiry include, *inter alia,*

> **\*4** (1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention.

*In re Holocaust Victim,* 225 F.3d at 198. "Among the most important factors in a timeliness decision is 'the length of time the applicant knew or should have known of his interest before making the motion.'"*Catanzano,* 103 F.3d at 232 (citing *Farmland Dairies,* 847 F.2d at 1044).

Even where the motion to intervene has been timely made, the proposed intervenor must satisfy the other prerequisites to intervention as of right under Rule 24(a)(2), including showing an "interest" in the litigation that is "direct, substantial, and legally protectable." *Washington Elec.,* 922 F.2d at 97. "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy [Rule 24(a) ]."*Id* .Moreover, movants seeking intervention as of right must also establish "that disposition of the action might as a practical matter impair [their] interest,"*United States Postal Serv. v. Brennan,* 579 F.2d 188, 191 (2d Cir.1978), a showing that cannot be satisfied where the proposed intervenors "remain free to file a separate action...."*In re Holocaust Victim,* 225 F.3d at 199. Furthermore, "[i]ntervenors must take the pleadings in a case as they find them."*Washington Elec.,* 922 F.2d at 97. A court may decline to grant a motion for intervention where "intervention [would] radically alter [the] scope" of a suit "to create a much different suit."*Id.*

Finally, while the movant's burden of establishing inadequate representation of interests is a "minimal" one, "persuasive evidence" is required to show that counsel for the plaintiff will not vigorously pursue the claims in the case. *See id.* at 98.And where "there is identity of interest between a putative intervenor and a party, adequate representation is assured."*Id.*

**B. Application of the Law to the Facts of this Case**

Having assessed Movants' application in light of these standards, this Court concludes that their motion to intervene should be denied. Assuming *arguendo* that Movants have standing to intervene,[4] Movants have not demonstrated that they should be permitted to do so. First, they fail on the timeliness prong of Rule 24(a). Movants have been aware of, and even involved with, this litigation since its earliest stages. They provided declarations in support of plaintiffs' motion for expedited discovery—filed with the Court on September 1, 2011. *See* Delott Decl.; Rosasco Decl. Furthermore, Mr. Delott represents two of the named plaintiffs in connection with their individual benefits claims, and Movants requested (and received) occasional "updates" from plaintiffs' counsel during the settlement negotiation period, *see* Pl. 12/10/12 Opp. at 2, which commenced in February 2012. *See* 2/21/12 Minute Entry.

**\*5** That Movants may not have realized until late November 2012 that defendant had refused to include in the Settlement Agreement a recusal or transfer requirement for all of Movants' Queens ODAR cases, *see* 12/4/12 Motion at 1–2; 12/11/12 Reply at 2, does not excuse their months of inaction while the parties continued their protracted settlement negotiations. In March 2012, Movants first raised the prospect of writing to the Court about retaliation concerns, *see* 3/9/12 Email, DE # 113 at 8–9, and plaintiffs' counsel responded that he would request that Movants' future cases be assigned to other ALJs. *See* 3/11/12 Email, DE # 113 at 8. Despite Movants' assertion that they were "promised" reassignment of their cases, *see* Movants' 1/28/13 Letter at 2, Movants conceded, at oral argument, that they had no guarantee that defendant would agree to such a demand, nor, at the time the affidavits were made, whether plaintiffs would eventually obtain any relief by way of this lawsuit. Their more than seven-month failure to follow up with plaintiffs' counsel on the status of that request is a problem of their own making.

Case 3:13-cv-00589-JAM   Document 191-1   Filed 02/15/16   Page 5 of 10
Padro v. Astrue, Not Reported in F.Supp.2d (2013)
2013 WL 1192824

As for the second factor in the timeliness inquiry—i.e., the prejudice to the existing parties resulting from Movants' delay in making their motion—the delay in this case and resulting prejudice are both quite substantial. Movants waited until the concluding phase of the parties' settlement negotiations before seeking permission to intervene and, if their motion were granted, they would derail the settlement process, and, at a minimum, would delay approval of the Settlement Agreement now before the Court, as well as attendant relief for plaintiffs' class. Having reviewed the Settlement Agreement, this Court agrees with plaintiffs' counsel that it incorporates robust relief and substantial protections for plaintiffs' class, and that allowing Movants to renegotiate its terms would substantially prejudice the parties and the class. *See generally* Pl. 12/10/12 Opp. at 3 (identifying prejudice to the existing parties and collecting cases that denied motions to intervene where granting intervention would jeopardize settlements and/or settlement negotiations); Def. 12/11/12 Opp. at 2 (arguing that "[t]he timing of the instant application is prejudicial and disruptive to the parties' settlement negotiations").[5]

Nor have Movants persuasively shown that they will be prejudiced by the denial of their application—another factor relevant to the timeliness analysis. Movants have asserted that, if intervention is denied, they will have been "better off overall" if this lawsuit had "never been brought." *See* 12/11/12 Reply at 3. But Movants have provided insufficient evidence to support their contention that, unless they are permitted to intervene in this litigation, justice cannot be achieved. *See id.* Movants cite the disposition rates of the five named ALJs since the filing of this lawsuit, *see* Movants' 1/14/13 Supp. at 1,[6] but fail to address the pertinent statistics, cited by plaintiffs, which suggest that more recent retraining and monitoring efforts have had their intended effect.[7] *See* Pl. 1/25/13 Supp. at 2–3.

*6 More importantly, Movants' assertion that the five named ALJs will retaliate against them and reduce their fees, on account of Movants' 2011 declarations in this action, is unsupported by any concrete evidence that that has occurred to date.[8] It is no answer to say that "no statistics are actually needed to prove [Movants'] position." Movants' 1/28/13 Letter at 2.[9] Furthermore, Movants, who were outspoken critics of the five named ALJs prior to the initiation of this litigation, *see* Pl. 12/10/12 Opp. at 4, acknowledge that plaintiffs' counsel offered to represent Movants in the future, in the event they suffer such retaliation. *See* 12/4/12 Motion at 2; *see also* 11/30/12 Email, DE # 113 at 6.

Finally, Movants overlook the fact that the complex Settlement Agreement will allow class members who received unfavorable decisions from any of the five named ALJs to obtain rehearings before other ALJs or decisionmakers; it will also provide subclasses of future claimants with automatic review of unfavorable decisions from any of the five named ALJs and, where a claim is remanded for a new hearing, a new ALJ will be assigned. *See generally* Settlement Agreement at 6–7, 9–11. Thus, to the extent that Movants believe that an unfavorable decision is the product of retaliation against Movants, they may and presumably will counsel their clients to seek a rehearing before a different ALJ. Accordingly, the protections afforded to members of plaintiffs' class will indirectly benefit Movants.

Having considered the totality of the circumstances, the Court concludes that Movants' application is untimely.

In any event, Movants have failed to establish a cognizable interest under Rule 24(a). Movants' commercial interest in prosecuting Social Security claims is not "direct, substantial and legally protectable." *Washington Elec.*, 922 F.2d at 97. The two attorneys assert that unless the five named ALJs are removed from their positions or from cases involving Movants' clients, the number of claims that Movants successfully prosecute will be depressed and, because those attorneys operate on a contingency fee basis, their revenue from Social Security claims will likewise be depressed. *See* 12/4/12 Motion at 3. However, contrary to the prerequisites of Rule 24(a)(2), the disposition of this action will not impair Movants' interests, and they will retain the right to file a separate action in the event their fears of retaliation are realized.[10] Moreover, any such interest in this litigation is "contingent upon occurrence of a sequence of events" that may not come to pass, and is therefore too remote to be colorable. *See Washington Elec.*, 922 F.2d at 97.[11] And even if such a commercial interest were legally cognizable, the interjection of commercial claims into this lawsuit would "radically alter" the nature of the litigation and, for that reason, should be rejected. *See id.*

In initially requesting permission to intervene, Movants sought to represent the interests of future claimants and the private Social Security bar. *See* 12/4/12 Motion at 3. At that time, Movants characterized the proposed settlement as "wholly inadequate," "illusory," and "window dressing,"

Case 3:13-cv-00589-JAM   Document 191-1   Filed 02/15/16   Page 6 of 10
Padro v. Astrue, Not Reported in F.Supp.2d (2013)
2013 WL 1192824

12/4/12 Motion at 2, and they accused plaintiffs' counsel of compromising the interests of the firm's clients and the class in order to protect the firm's financial interests. *See* 12/11/12 Reply at 3. However, having monitored this case from its inception, this Court knows first hand that plaintiffs' counsel have vigorously advocated on behalf of plaintiffs and the class and that, in the face of a substantial and still-pending motion to dismiss, were able to secure defendant's agreement to a settlement structure that affords substantial relief to claimants now and in the future.

***7** Apparently recognizing the futility of their argument that claimants' interests would not be "adequately protected by the parties to the action,"*In re Holocaust Victim,* 225 F.3d at 197, Movants now recast their application and seek to intervene solely in their individual capacities as two attorneys who represent Social Security claimants. [12] For the foregoing reasons, Movants are not entitled to intervene as of right and thereby scuttle or delay implementation of a settlement intended to benefit Movants' current and future clients and other claimants.

## II. Permissive Intervention

### A. Governing Legal Principles

"Permissive intervention is wholly discretionary with the trial court,"*USPS v. Brennan,* 579 F.2d at 191, whose discretion is so very broad that reversal of a district court's "denial of permissive intervention is a very rare bird indeed...."*United States v. Pitney Bowes,* 25 F.3d 66, 73 (2d Cir.1994); *see Washington Elec.,* 922 F.2d at 98 (denial of permissive intervention rests within the district court's "broad discretion"); *USPS v. Brennan,* 579 F.2d at 192 (observing that "trial court's discretion is very broad"). Permissive intervention may be granted only "if the application is timely and if the 'applicant's claim or defense and the main action have a question of law or fact in common.'"*In re Holocaust Victim,* 225 F.3d at 202 (quoting Fed.R.Civ.P. 24(b)(2)); *see supra* note 3."The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"*Pitney Bowes,* 25 F.3d at 73 (quoting Fed.R.Civ.P. 24(b)(2)); *accord In re Holocaust Victim,* 225 F.3d at 202; *USPS v. Brennan,* 579 F.2d at 191. Consequently, the Second Circuit has consistently sustained the denial of permissive intervention where granting the request would destroy or delay implementation of an agreed-upon settlement, *see In re Holocaust Victim,* 225 F.3d at 202; *Pitney Bowes,* 25 F.3d at 73–74, and/or where the district court found the application to be untimely.*See Pitney Bowes,* 25 F.3d at 74.

### B. Application of the Law to the Facts of this Case

In the event that Movants are seeking permissive intervention under Rule 24(b), they have failed to satisfy the standards for awarding such relief. As a threshold matter, their application is untimely, for all the reasons detailed above. In any event, intervention at this stage of the proceeding would severely prejudice the interests of the original parties, including the class of vulnerable claimants. Intervention would require renegotiation of the parties' Settlement Agreement and would either destroy the settlement or, at a minimum, significantly delay its implementation. Permissive intervention would thereby "unduly delay or prejudice the adjudication of the original parties' rights,"*see*Fed.R.Civ.P. 24(b)(3), and, for that reason, should be denied.

## *CONCLUSION*

***8** Based on the foregoing reasons, this Court respectfully recommends that Movants' motion to intervene be denied.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Carol B. Amon on or before **February 25, 2013**.Failure to file objections in a timely manner may waive a right to appeal the District Court order. *See*28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a)(1), 72(b) (2); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).

The Clerk is directed to enter this Report and Recommendation into the ECF system.

**SO ORDERED.**

## All Citations

Not Reported in F.Supp.2d, 2013 WL 1192824

Footnotes

Case 3:13-cv-00589-JAM   Document 191-1   Filed 02/15/16   Page 7 of 10
Padro v. Astrue, Not Reported in F.Supp.2d (2013)
2013 WL 1192824

1     *See generally N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.,* 996 F.2d 21, 25 (2d Cir.1993) (absent proposed intervenors' consent, magistrate judge is not authorized to enter final judgment denying intervention, but instead may report and recommend denial to the district judge).

2     *See* Settlement Status Letter (Mar. 6, 2012), DE # 75 (filed under seal); Status Report (Apr. 17, 2012), DE # 78; Status Report (May 16, 2012), DE # 80; Status Report (June 15, 2012), DE # 82; Status Report (July 20, 2012), DE # 85; Status Report (Sept. 10, 2012), DE # 88; Status Report (Oct. 10, 2012), DE # 90; Status Report (Oct. 18, 2012), DE # 92; Status Report (Nov. 8, 2012), DE # 94; Status Report (Nov. 29, 2012), DE # 96; *see also* Minute Order for Proceedings Held Before Magistrate Judge Roanne L. Mann (Dec. 20, 2012) ("12/20/12 Minute Entry"), DE # 104.

3     Rule 24(a), on "Intervention of Right," provides: "On timely motion, the court must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."Fed.R.Civ.P. 24(a).

     Rule 24(b), titled "Permissive Intervention," states: "On timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact.... In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."Fed.R.Civ.P. 24(b)(1)-(3).

4     *Compare USPS v. Brennan,* 579 F.2d at 190 (given the existence of a case or controversy between plaintiff and defendants, "there was no need to impose the standing requirement upon the proposed intervenor"), *with In re Holocaust Victim,* 225 F.3d at 195 (treating standing as threshold inquiry).

5     Movants seek to distinguish the cases cited by the parties by arguing that in each such case, "actual settlement agreements had already been reached and forwarded to the court" at the time the motion to intervene was filed. 12/11/12 Reply at 2; *but see, e.g., Bloomington v. Westinghouse Elec. Corp.,* 824 F.2d 531 (7th Cir.1987) (district court did not abuse its discretion in denying motion to intervene filed two and a half months prior to announcement of settlement agreement, which followed more than a year of negotiations, of which movants had been aware); *Aleut Corp. v. Tyonek Native Corp.,* 725 F.2d 527, 529–30 (9th Cir.1984) (district court did not abuse its discretion in denying motion to intervene as untimely, where motion was filed in the month preceding parties' settlement agreement). Whether Movants' application immediately preceded or followed the parties' submission of their Settlement Agreement is not dispositive; what matters is that "the movants propose to intrude at the very end of this long [settlement negotiation] process," threatening to destroy the parties' settlement and " 'send[ ] them back to the drawing board.' "*Authors Guild v. Google, Inc.,* No. 05 Civ. 8136(DC), 2009 WL 3617732, at *3 (S.D.N.Y. Nov.4, 2009) (Chin, J.) (citing *In re Holocaust Victim,* 225 F.3d at 199).

     Equally unavailing is Movants' suggestion that the motion to intervene should be deemed timely because Movants made it shortly after contacting plaintiffs' counsel and reviewing the November 30th draft of the parties' settlement agreement.*See* 12/11/12 Reply at 2. Movants have been aware of this litigation almost since its inception, and the fact that they only recently requested updated information on the parties' proposed settlement does not excuse their delay. *See Authors Guild,* 2009 WL 3617732, at *2.

6     While "partially favorable" decisions may well shed some light on possible bias of an ALJ, *see* Movants' 1/28/13 Letter at 1, the fact remains that Movants' statistics improperly contrast the average New York and national *denial* rates with the *combined* denial and partially favorable rates of the named ALJs. *See* Pl. 1/25/13 Supp. at 1–2 & n. 2.

7     Citing the increased denial rate of one ALJ after a previous class action against him was dropped, Movants suggest that the named ALJs will likewise "revert[ ] to [their] old ways of anti-claimant basis and denials" as soon as the instant case is closed. *See* Movants' 1/14/13 Letter at 2. As a preliminary matter, Movants' characterization of that prior lawsuit has been called into question by Mr. Delott's employer at the time. *See* Letter from Charles E. Binder (Feb. 6, 2013) at 2, DE # 117–1. In any event, even accepting as true Movants' description of that litigation, Movants ignore the fact that here, in contrast, the named ALJs have received retraining, and the Settlement Agreement contemplates thirty months of monitoring even after the case has been closed.

8     As plaintiffs note, Movants' supplemental submission fails to provide:
   - Any evidence that the Named ALJs are denying a higher percentage of [Movants'] clients' claims now than they did prior to their submission of affidavits in this matter;
   - Any evidence that the Named ALJs refuse to approve [Movants'] fees at a higher rate than prior to their submission of affidavits in this matter;
   - Any evidence that the Named ALJs refuse to approve [Movants'] fees at any different rate than they do for the other advocates; or
   - Any other evidence of actual retaliation by the Named ALJs directed at [Movants].

Case 3:13-cv-00589-JAM   Document 191-1   Filed 02/15/16   Page 8 of 10
Padro v. Astrue, Not Reported in F.Supp.2d (2013)
2013 WL 1192824

Pl. 1/25/13 Supp. at 3.

9   Movants' reliance on two out-of-circuit cases requiring judges to recuse does not advance their argument, as those cases involved interpretations of the federal statutory standard for judicial recusal (see *United States v. Anderson,* 160 F.3d 231, 233 (5th Cir.1998)), and a similar Florida state statute (see *Brewton v. Kelly,* 166 So.2d 834 (Fla. 2d DCA 1964)), neither of which is applicable here. See generally *Richardson v. Quarterman,* 537 F.3d 466, 477 n. 6 (5th Cir.2008) (distinguishing *Anderson* on this basis); *Frase v. McCray,* No. 9:01–CV–1704, 2003 WL 57919, at *10 (N.D.N.Y. Jan.8, 2003) (same). In any event, the issue before this Court is not whether, if Movants were to seek recusal in a particular administrative proceeding, their motion should be granted or denied; rather, the issue before the Court is whether Movants' desire to modify the Settlement Agreement to include individualized relief for two attorneys is sufficient to suspend the parties' progress toward a classwide resolution of the case on behalf of claimants, where the Settlement Agreement will leave undisturbed Movants' right to seek recusal on a case-by-case basis.

10  Movants' reliance on the factually inapposite decision in *Brennan v. New York City Board of Education,* 260 F.3d 123, *see* 12/11/12 Reply at 2, is misplaced. In *Brennan,* the Second Circuit reversed a denial of a motion to intervene as of right where the parties' settlement agreement would confer retroactive seniority and other employment rights on fifty-four minority and female custodians and custodian engineers, thereby resulting in the loss of relative seniority on the part of the intervenors, who were non-minority male custodians and custodian engineers. *See id.* at 128, 132. Here, in contrast, the remedies afforded claimants would not have a negative impact on Movants' interests.

11  The speculative nature of the pecuniary harm predicted by Movants is further underscored by the fact that, if any of the five named Al–Js renders a decision unfavorable to Movants' clients, the Settlement Agreement may enable those clients to obtain rehearings before different Al–Js. *See supra* p. 12.

12  Nevertheless, in their most recent submissions to the Court, Movants again predict that their "clients will eventually be impacted negatively" by the Settlement Agreement, in that they could not "expect to receive fair hearings." Movants' 1/28/13 Letter at 2; *see* Letter Responding to Binder Letter (Feb. 6, 2013) at 2, DE # 118 (the absence of a provision in the Settlement Agreement "disqualify[ing]" the five named ALJs "creates significant future due process problems both for us and our clients"). Notably, although Mr. Delott represents two of the named plaintiffs, *see* 12/4/12 Motion at 1, neither of those plaintiffs has sought to discharge plaintiffs' counsel from representing them in this action.

---

End of Document                                  © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4188079
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

FEDERAL HOUSING FINANCE AGENCY, Plaintiff,
v.
HSBC NORTH AMERICA
HOLDINGS INC., et al., Defendants.

No. 11cv6189 (DLC).
|
Signed Aug. 25, 2014.

**Attorneys and Law Firms**

William J. Sanchez, William J. Sanchez P.A., John de Leon, Chavez and DeLeon P.A., Miama, FL, for putative plaintiff-intervenor Roger Mauermann.

## OPINION & ORDER

DENISE COTE, District Judge.

*1 On August 18, 2014, Roger Mauermann ("Mauermann") moved for leave to intervene in the above-captioned action pursuant to Federal Rule of Civil Procedure 24(a)(2). The Federal Housing Finance Agency ("FHFA"), as conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (together, the "GSEs"), filed this action on September 2, 2011 against HSBC North American Holdings Inc. and related entities ("HSBC") for securities fraud in the packaging, marketing, and sale of residential mortgage-backed securities ("RMBS") purchased by the GSEs between 2005 and 2007. FHFA alleges that HSBC made materially false statements in offering documents for the RMBS concerning the loans underlying those securities (the "Mortgage Loans"). The parties' joint pretrial Mauermann represents that one of the Mortgage Loans was his and moves to intervene on behalf of all borrowers whose mortgages (1) backed the RMBS at issue, (2) were originated "due to the fraudulent and predatory tactics facilitated by the Defendants," and (3) "have been in, or are currently undergoing foreclosure proceedings." In a complaint submitted with his motion, Mauermann alleges that borrowers were "provided ... with false information regarding the finance charges and interest rates that [borrowers] would be required to pay"; that HSBC "breached the mortgage contract between the parties" by, *inter alia,* "[f]ailing to properly and timely demand payments" and forcing borrowers to pay for hazard insurance; and that HSBC engaged in a "pattern of racketeering activity through the originator[s]."

Mauermann argues that he has a right to intervene pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. In the alternative, Mauermann requests that the Court exercise its discretion to permit intervention pursuant to Rule 24(b)(1)(B). For the reasons that follow, Mauermann's motion is denied.

## DISCUSSION

### I. Intervention of Right

A non-party has a right to intervene in an action, "[o]n timely motion," where the non-party

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

F.R.C.P. 24(a)(2). Mauermann's motion is untimely. A court has "broad discretion in assessing the timeliness of a motion to intervene" and is to consider "the totality of the circumstances." *In re Holocaust Victim Assets Litig.,* 225 F.3d 191, 198 (2d Cir.2000). Factors relevant to a motion's timeliness include

(a) the length of time the applicant knew or should have known of its interest before making the motion;

(b) prejudice to existing parties resulting from the applicant's delay;

(c) prejudice to the applicant if the motion is denied; and

*2 (d) the presence of unusual circumstances militating for or against a finding of timeliness.

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 390 (2d Cir.2006) (citation omitted).

FHFA filed this action on September 2, 2011. Mauermann waited nearly three years, until the eve of trial, to make this motion. Were the Court to inject Mauermann's claims into this case at this late stage-which chiefly concern alleged fraudulent and predatory lending practices by non-party originators, as opposed to the false statements in HSBC's offering documents FHFA alleges here-prejudice to the existing parties would be extreme. Accordingly, Mauermann's motion is untimely.

Even if it were timely, Mauermann's motion would fail because he cannot claim an adequate interest in this case. The putative intervenor's "interest in the proceeding" must be "direct, substantial, and legally protectable." *Wa. Elec. CoOp., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir.1990)."An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."*Id.*

Mauermann does not claim an interest in the RMBS at issue here. Mauermann's interest in his own mortgage loan does not translate into a "direct, substantial, and legally protectable" interest in the RMBS (*i.e.,* the securities transactions that are the subject of this action). Nor does he argue that it does. Rather, he asserts that he and others similarly situated "have a direct interest in the litigation since the factual allegations in the FHFA complaint and amended complaint, if proved, would show Defendants are liable to [him]." The factual allegations largely relate to the formation of supporting loan groups for RMBS certificates, the accuracy of the descriptions of the Mortgage Loans in those groups, and the adequacy of the due diligence directed to the Mortgage Loans in the groups. This evidence does not establish the direct, legally protectable interest to Mauermann's claims concerning the origination of his mortgage that is required by Rule 24(a)(2).Rule 24"is not intended to allow for the creation of whole new suits by intervenors ."*Id.*

## II. Permissive Intervention

Where a non-party cannot intervene as of right, a court may permit intervention, "[o]n timely motion," where the non-party "has a claim or defense that shares with the main action a common question of law or fact."Fed.R.Civ.P. 24(b)(1)(B). For the reasons stated above, Mauermann's motion is untimely.

Even if it were timely, permissive intervention would be inappropriate here. A district court has broad discretion in deciding whether to grant permissive intervention. *See Wa. Elec. Co–Op.,* 922 F.2d at 98. In exercising its discretion, a district court must consider whether granting the request "will unduly delay or prejudice the adjudication of the original parties' rights."Fed.R.Civ.P. 24(b)(3). Additional relevant factors

> *3 include the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 797 F.2d 85, 89 (2d Cir.1986) (citation omitted).

For the reasons stated above, Mauermann's interests are unaffected by this litigation. Moreover, intervention would be extremely disruptive, essentially inserting an entirely new action, with new claims about the conduct of non-parties, on the eve of trial in this action. Although Mauermann's mortgage loan happens to be one of those securitized by HSBC in the RMBS at issue here, Mauermann's claims have no place in this litigation.

## CONCLUSION

Mauermann's August 18, 2014 motion for leave to intervene is denied. His August 21, 2014 request for oral argument is denied as moot.

SO ORDERED:

**All Citations**

Slip Copy, 2014 WL 4188079

End of Document                                               © 2016 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.                                      2