UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NORTH RIVER INSURANCE CO., <br>    *Plaintiff*, <br><br>    v. <br><br> O&G INDUSTRIES, INC., *et al*, <br>    *Defendants*. | No. 3:13-cv-00589 (JAM) |

**ORDER GRANTING MOTION TO INTERVENE**

  Several dozen victims of the tragic Kleen Energy plant explosion in Middletown, Connecticut have moved to intervene in this insurance dispute between an insurance company and a construction company that is alleged to have caused the explosion. Plaintiff North River Insurance Company (North River) has filed this action against defendant Keystone Construction and Maintenance Services, Inc. (Keystone). North River primarily contends that Keystone breached the terms of its insurance policy and that Keystone's breach entitles North River to declaratory relief exonerating it of any remaining obligations to Keystone under the policy.

  In the meantime, having recently received a large arbitration award of damages against Keystone, the proposed intervenors now seek to intervene in this action as third-party defendants and to assert counterclaims for relief against North River. Because I conclude that all of the requisites for both mandatory and permissive intervention have been shown under Rule 24 of the Federal Rules of Civil Procedure, I will grant the motion to intervene.

**BACKGROUND**

  In order to understand the context in which this intervention motion arises, it is necessary to review in some detail the background of this litigation.

*Kleen Energy Plant and Explosion*

The Kleen Energy plant was a power plant under construction in Middletown, Connecticut. The owner of the power plant hired defendant O&G Industries, Co. (O&G), as the general contractor for the construction of the plant in 2009. O&G then hired Keystone to install, test, and flush the above-ground piping system. As part of that work, Keystone performed a "natural gas blow" in February of 2010 to clear out debris in the above-ground piping system. This procedure provoked an explosion that killed six workers, injured dozens more, and caused extensive property damage.

The explosion prompted many legal actions against Keystone, which turned to its insurance carriers for help in defending against these actions. Keystone held multiple insurance policies, including a second-layer excess policy with North River. In December 2011, O&G filed an arbitration action against Keystone seeking damages suffered as a result of the explosion; Keystone presented this action to North River in December 2011 and demanded that North River defend and indemnify it against the arbitration. Keystone also presented this action to its other insurers. North River informed Keystone in May 2012 that the North River policy did not include a defense obligation. North River told Keystone that any duty to indemnify Keystone under the policy would only arise after all underlying insurance had been exhausted. North River claimed, and maintains today, that the underlying insurance had not and has not yet been exhausted.

Between 2012 and 2015, Keystone entered into settlement agreements with at least two of its insurance carriers and an arbitration agreement with the proposed intervenors. The arbitration has now occurred, and Keystone was found strictly liable for the damages caused to the proposed intervenors. Since the explosion, Keystone has ceased functioning as an active

construction management company. According to both its CEO and retained counsel, Keystone is now a shell corporation that exists for purposes of resolving the litigation. Further, counsel for Keystone represents that he has not been paid for his work on Keystone for some time and that he does not anticipate being paid.

### *The Instant Litigation*

In April 2013, North River brought this federal diversity jurisdiction action seeking a declaratory judgment against O&G and Keystone for breach of contract. North River also brought CUTPA and tort claims against both defendants. In February 2014, North River and Keystone filed a stipulation of dismissal without prejudice as to the two counts against O&G; only Keystone now remains as a defendant. *See* Doc. #81.

North River contends that Keystone breached the terms of the insurance contract by not cooperating, communicating, and being honest with North River as Keystone sought insurance coverage in the aftermath of the explosion. As a result, North River claims that it does not have obligations to Keystone for any claims arising from the explosion. Keystone disputes North River's claims, but has not alleged any counterclaims against North River.

In January 2016, North River filed a third amended complaint that largely reiterates North River's earlier complaints. The third amended complaint also adds allegations that Keystone has wrongfully taken part in arbitration with the proposed intervenors. *See* Doc. # 174-1 at ¶¶ 119-25, 144, 145.

### *The Proposed Intervenors*

The proposed intervenors are individual victims of the Kleen Energy plant explosion. There are 22 intervenors who have suffered bodily injuries (or loss of consortium) and 53 who sustained diminished value of real estate. The proposed intervenors sought damages from

Keystone in an arbitration action. In October 2015, the arbitrator found Keystone strictly liable for the explosion. *See* Doc. #153-2. In January 2016, the arbitrator issued a number of individual damages awards against Keystone, totaling $35 million. *See* Doc. #180. On March 1, 2016, the Connecticut Superior Court confirmed the proposed intervenors' arbitration award. *See* Doc. #195-1 at 2.

The proposed intervenors have now filed a motion to intervene in this lawsuit. *See* Doc. #153-1. They have also filed a proposed counterclaim against North River alleging claims of (1) breach of contract for not paying the judgment owed by Keystone to intervenors, (2) bad faith "failure to provide coverage to Keystone" for North River's "settlement practices, . . . claims handling and investigation practices, . . . and its bad faith failure to settle the underlying action within [Keystone's] policy limits when it had multiple, reasonable opportunities to do so," Doc. #185-1 at 4, (3) negligence for failure to settle, and (4) violations of Massachusetts consumer protection law. *See* Doc. #185-1. The proposed counterclaim includes a jury demand. North River opposes the intervention motion.

## DISCUSSION

Rule 24(a) of the Federal Rules of Civil Procedure provides for intervention *as of right* under certain circumstances:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Rule 24(b) correspondingly provides for *permissive* intervention, stating that "[o]n timely motion, the court may permit anyone to intervene who . . . has a

claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

Under both Rule 24(a) and (b), "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014). A "[f]ailure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Ibid.*

### *Intervention as of Right under Rule 24(a)*

I now turn to an evaluation of whether proposed intervenors are entitled to intervention as of right under Rule 24(a) and in light of each of the four factors that govern consideration of such a claim for intervention.

#### *1. Timeliness*

The timeliness of a Rule 24 motion "defies precise definition." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000). Factors to consider include: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Ibid.*

Here, despite the fact that intervenors have long known of this litigation, the motion to intervene was not filed until the proposed intervenors received a favorable arbitration decision against Keystone. The delay is understandable, because entry of the arbitration award has given intervenors a legitimate interest in the litigation. *See Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 874 (2d Cir. 1984) (requiring for intervention an

interest that is "significantly protectable" and "direct, as opposed to remote or contingent"); *see also TIG Ins. Co. v. Huber*, 2005 WL 806715, at *2 (D. Conn. 2005) (noting that "[g]enerally, federal courts have declined to permit intervention based on an interest deriving from contingent success in an underlying tort action").

North River claims that it will be greatly prejudiced by intervention, because this case was poised for a bench trial this Spring and because the proposed intervenors seek to add additional claims and demand a jury trial. In my view, however, prejudice to North River caused by intervention is not substantial and certainly not greater than the prejudice faced by the proposed intervenors if the motion were to be denied. North River is not currently paying Keystone's claims under the policy; a delay in judgment means additional uncertainty but not outright financial harm. Further, proposed intervenors have made it clear that, if North River prevails in this case, or refuses to pay claims if Keystone prevails, they will seek payment through additional litigation. Either way, North River and proposed intervenors will have to pay litigation costs associated with coverage of the proposed intervenors' claims. In sum, I conclude that the motion to intervene is timely.

### 2. Interest

As noted above, an "interest" in the context of a Rule 24(a) intervention must be "significantly protectable" and "direct, as opposed to remote or contingent." *Restor-A-Dent Dental Labs*, 725 F.2d at 874. Contingent, related tort actions are not protectable interests. *See United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) ("An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."); *Penn-Am. Ins. Co. v. Allied Homes, LLC*, 2012 WL 3727959, at *1 (D. Conn. 2012) ("Unless and until he has

obtained a final judgment in the underlying [state tort] case, Ramsey's interest in this declaratory judgment action is too remote to warrant intervention.")

The proposed intervenors' interest in this case is no longer contingent and is now directly enforceable against Keystone. The proposed intervenors have obtained a decision of arbitration that found Keystone strictly liable for the explosion and that assessed individual damage awards for injuries sustained by the proposed intervenors as a result of the explosion. The arbitration award was confirmed by the Connecticut Superior Court on March 1, 2016. Therefore, this factor of an "interest" in the litigation is satisfied in favor of intervention.

### 3. Impairment

When evaluating a motion for intervention, I must look at whether, "as a practical matter," the proposed intervenors' legitimate interest will be impaired as a result of the underlying litigation. *Delaware Trust Co. v. Wilmington Trust, N.A.,* 534 B.R. 500, 509 (S.D.N.Y. 2015); *see also New York Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of N. Y.*, 516 F.2d 350, 352 (2d Cir. 1975). Here, it appears to me that there is a significant likelihood that the proposed intervenors' interests will be impaired if they are not permitted to intervene. *See Known Litig. Holdings, LLC v. Navigators Ins. Co.*, 2014 WL 6388787, at *7 (D. Conn. 2014) (proposed intervenor's right would be impaired if default judgment entered against insurance policyholders because that judgment would prevent the proposed intervenor as loss payee from recouping lost funds); *TIG Ins. Co.*, 2005 WL 806715, at *2  (same); *but see Penn-America Ins. Co. v. Allied Homes, LLC.*, 2012 WL 3727959, at *2 (finding right not impaired because "[u]nder Connecticut law, an underlying tort claimant who has been denied intervention in an insurance coverage action that resulted in a default judgment is not collaterally estopped from later litigating the coverage question in a direct action against the insurer under Conn. Gen.

Stat. § 38a–321"); *see also Gambino v. Am. Guarantee & Liab. Ins. Co.,* 2009 WL 3158151, at *1 (D. Conn. 2009) (discussing principles governing right of tort victim to sue tortfeasor's insurance company after insurance company has obtained declaratory relief against tortfeasor by means of default judgment).

In light of the foregoing precedent, the proposed intervenors' future right to seek relief against North River by means of a separate action is somewhat uncertain. Indeed, North River stakes its claim of prejudice here to its contention that the proposed intervenors would be precluded by a judgment in North River's favor in this case from a later direct action for relief against North River. As a practical and probabilistic matter, therefore, I conclude that the interests of proposed intervenors would be impaired if they were not permitted to intervene in this action.

### *4. Adequacy of Representation*

"Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured." *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990). An intervenor's interest in an insurance declaratory judgment is often protected by the insured, "who has an equal, if not greater, interest in receiving insurance coverage." *Gulf Underwriters Ins. Co. v. The Hurd Ins. Agency*, 2004 WL 2935794, at *1 (D. Conn. 2004). While there is generally a "presumption of adequacy" in intervention cases, "evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir. 2001).

As a first approach, the proposed intervenors claim that there is adversity of interest between them and Keystone, because Keystone has tried to limit its liability towards them

through vigorously defending itself in the arbitration. I am not convinced. The fact that Keystone sought to limit its payout to intervenors does not mean that Keystone would oppose the proposed intervenors' being paid instead by North River.

But that does not end the inquiry. Keystone is now a near-defunct corporation that has no incentive beyond good faith to continue to litigate this action. From the record, it appears to the Court that Keystone has been vigorously litigating this claim. *See, e.g.,* Docs. #12, #41, #111, #124. North River contends that Keystone is continuing to defend this lawsuit at full strength, but there is good reason not to assume that the past predicts the future so cleanly in this case. From representations of counsel and the affidavit of Keystone's CEO and sole stockholder, Keystone has ceased to function as an ongoing business operation. It therefore has little to lose by defaulting on the arbitration judgment—it does not intend to continue to operate and therefore does not need to maintain a good reputation, and it has no assets to seize. This, combined with the fact that counsel is apparently working for free and may not be under any obligation to continue to do so, raises doubts whether the proposed intervenors' rights will continue to be adequately represented in this case. In light of Keystone's current condition, I do not have sufficient confidence that it can and will continue to adequately represent the interests of the proposed intervenors in this action.

In short, I conclude that the proposed intervenors have shown that they are entitled to intervene as a matter of right under Rule 24(a). They timely filed their motion to intervene. They have an interest that would likely be impaired if they are not afforded an opportunity to participate and that would not otherwise likely be adequately represented by Keystone in its current depleted condition.

*Permissive Intervention under Rule 24(b)*

Even if I were to conclude that the proposed intervenors were not entitled to intervention as of right, I would conclude that permissive intervention is appropriate. Rule 24(b) allows intervention by permission of the court when the intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

The proposed intervenors here raise counterclaims that clearly share common questions of law or fact. The existing action brought by North River claims that the process by which Keystone handled the initial claims settlement process in the aftermath of the explosion violated the terms of the insurance contract between North River and Keystone. Proposed intervenors' counterclaim similarly alleges violations—this time, on the part of North River—of the terms of the same contract. Specifically, the proposed intervenors claim that North River should have negotiated with Keystone and that the failure to do so was in bad faith, negligent, and additionally in violation of Massachusetts's unfair trade practices law.

The proposed intervention here is far more appropriate than the proposed intervention in *Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.*, in which the Second Circuit declined to allow a Vermont state agency to intervene in a contract dispute between a group of Vermont municipalities and a Massachusetts public corporation that sold shares of power generation facilities. 922 F.2d at 97. The Second Circuit ruled that the Vermont agency could not intervene because the new plaintiff claimed to represent six additional signatories, multiplying the claim for damages by six and adding new issues. *Ibid.*

In comparison, the scope of the proposed intervenors' counterclaim here is well within the scope of North River's complaint. The pleadings on both sides address what is at stake in the litigation between North River and Keystone: whether or not, under the terms of the contract and

the common law good faith and fair dealing standards, North River should have entered into conversations about settlement with Keystone at the early stages—or if Keystone's settlements, without North River's consent, violated that same contract. The facts about which entities said what to whom, and when, are common facts —and the legal ramifications of the contract provisions are common questions of law.

North River's behavior under the contract was undoubtedly going to be raised as part of the initial suit; there is no way to separately analyze Keystone's allegedly breaching behavior without also evaluating North River's behavior under the same contract. It is true that the proposed intervenors have also added a bad faith counterclaim against North River, but given the facts in this case, that addition does not substantially expand the scope of the present factual inquiry. I conclude that there are common questions of fact and law between the initial lawsuit and the proposed intervenors' counterclaim that weigh strongly in favor of permissive intervention under Rule 24(b).

North River's most recent amendment of its complaint further demonstrates the factual commonality between the claims pursued by North River and those to be pursued by the proposed intervenors. The third amended complaint alleges that Keystone's arbitration with the proposed intervenors was one of the mishandled settlements that amounted to a breach of Keystone's duties to North River. *See, e.g.*, Doc. #174 at 3 ("14. The Plaintiffs' bodily injury claims were not fairly litigated in the arbitration proceeding thereby prejudicing North River."). North River has now squarely presented the conduct and interests of the proposed intervenors as a part of its own claim against Keystone.

Additional considerations and the balance of equities also support permissive intervention. For claims of permissive intervention, the "elements of the rule must be read in

balance . . . A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation." *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984). Moreover, a primary consideration must be "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *U. S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978); *see also Citizens Against Casino Gambling in Erie Cty. v. Hogen*, 417 F. App'x 49, 51 (2d Cir. 2011).

Here, the proposed intervenors have a very strong claim of interest in the case; without North River's coverage, the proposed intervenors' $35 million arbitration award will likely not be paid. In addition, intervention may be appropriate if the proposed intervenors' participation will "assist in the just and equitable adjudication of any of the issues between the parties." *H.L. Hayden Co. v. Siemens Medical Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986). The participation of the proposed intervenors will assist in the adjudication of this matter.

Nor can I conclude that the proposed intervention will result in undue delay or prejudice to North River or Keystone. For its part, Keystone does not object to the proposed intervention. Any litigation arising out of a deadly explosion is going to be protracted and complex, let alone a case such as this that involves additional issues of negotiation and settlement obligations spanning years. As noted above, North River is currently facing only uncertainty, not a direct financial deprivation, with the delay of the resolution of this case. North River acknowledges that it is fully prepared to litigate an additional subrogation suit if the proposed intervenors were denied here. North River would be stuck in litigation either way. Any delay is neither undue nor prejudicial to North River.

Judicial economy also favors intervention. By considering the claims of proposed intervenors at this time, this will forestall future subrogation litigation—litigation that would

inevitably include extensive dispute not only about the merits of the claims, but also about the antecedent rights of the proposed intervenors to seek such relief at all.

## CONCLUSION

The proposed intervenor's motion to intervene (Doc. #153) is GRANTED.

It is so ordered.

Dated at New Haven this 18th day of April 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge