UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NORTH RIVER INSURANCE COMPANY,
 *Plaintiff-Counterdefendant*,

 v.

O & G INDUSTRIES, INC., *et al.*,                    No. 3:13-cv-00589 (JAM)
 *Defendants*,


KEVIN DULAC, *et al.*,
 *Intervenors-Counterclaimants*.

RULING DENYING MOTION FOR SUMMARY JUDGMENT

This case concerns an insurance dispute stemming from the notorious explosion that

occurred in February 2010 at the Kleen Energy power plant in Middletown, Connecticut. *See*

Doc. #200 (describing background of this litigation). Plaintiff North River Insurance Company

(North River) has filed this action against defendant Keystone Construction and Maintenance

Services, Inc. (Keystone). North River primarily contends that Keystone breached the terms of

its insurance policy such that North River no longer has any obligations to Keystone under the

policy. The intervenors (Intervenors) in this actions are several dozen individuals who suffered

losses from the explosion, and by filing of a counterclaim complaint against North River they

seek the benefit of Keystone's insurance policy with North River. North River in turn has moved

for summary judgment on all claims and counterclaims. For the reasons set forth below, I

conclude that many genuine issues of fact remain for trial. Accordingly, I will deny North

River's motion for summary judgment on all claims.

1

**BACKGROUND**

Keystone was a subcontractor hired to install, test, and flush the above-ground piping system for the power plant. On February 7, 2010, Keystone attempted to clean pipes at the construction site by performing a "natural gas blow" procedure, which allegedly provoked an explosion that killed and injured workers and caused extensive property damage. The explosion prompted many legal actions against Keystone, and Keystone held multiple insurance policies, including a second-layer excess policy with North River. North River filed this lawsuit for declaratory relief that Keystone violated the cooperation terms of the insurance policy, thus relieving North River of any further obligations to Keystone for claims arising from the explosion.

North River's third amended complaint alleges three counts against Keystone. Doc. #203. Count One seeks a declaratory judgment that Keystone materially breached the policy's cooperation clause. Count Two seeks a declaratory judgment that Keystone violated the policy's consent-to-settle clause by admitting liability and entering settlements without North River's consent. Count Four alleges a breach of the covenant of good faith and fair dealing.[1]

Intervenors' amended counterclaim complaint alleges five counts against North River. Doc. #225. Counterclaim One alleges that North River breached its insurance contract with Keystone. Counterclaim Two alleges that North River acted in bad faith with respect to its duties under the insurance policy. Counterclaim Three alleges that North River was negligent in its dealings with Keystone. Count Four alleges that North River engaged in unfair practices in violation of Massachusetts law. Counterclaim Five alleges that North River engaged in unfair

---

[1] Counts Three and Five were previously dismissed by the Court.

practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA) and the

Connecticut Unfair Insurance Practices Act (CUIPA).

**DISCUSSION**

The principles governing the Court's review of a motion for summary judgment are well

established. Summary judgment may be granted only if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who

opposes the motion for summary judgment and then decide if those facts would be enough—if

eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing

party. My role at summary judgment is not to judge the credibility of witnesses or to resolve

close contested issues of fact but solely to decide if there are enough facts that remain in dispute

to warrant a trial. *See generally Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*);

*Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

### *Count One – Breach of Cooperation Clause*

North River's insurance contract with Keystone includes condition G.3 that states: "YOU

and any other involved insured must . . . Cooperate with US in the investigation, settlement or

defense of the claim or suit." Doc. #394-1 at 45–46. To void an insurance policy for a violation

of a cooperation clause, an insurer must demonstrate that the insured's non-cooperation was

material or substantial; a lack of prejudice to the insurance company indicates that a failure to

cooperate was neither material nor substantial. *See Double G.G. Leasing, LLC v. Underwriters at*

*Lloyd's, London*, 116 Conn. App. 417, 433 (2009).

North River alleges that Keystone violated the cooperation clause by failing to provide

adequate documentation and information relating to claims made against Keystone by various

3

claimants, by colluding with the power plant's general contractor O&G Industries, Co. (O&G) to exhaust Keystone's underlying insurance coverage, by failing to provide information regarding settlements made by Keystone's underlying insurers, and by entering into settlements with O&G in which Keystone stipulated to its liability. Doc. #392 at 39–41.

I assume without deciding for the purposes of this ruling that Keystone failed to cooperate with North River. Nonetheless, North River has failed to establish that there are no genuine issues of material fact as to whether any of the alleged breaches were material or substantial. There is substantial evidence in the record that North River had much information at its disposal indicating Keystone's liability for the explosion. Such information included documentation provided by Keystone (Docs. #401-16, 402-1, 402-2, 402-3, 402-5, 402-8), and information relating to citations issued by OSHA against Keystone (Docs. #401-6 at 13-14, 402-7). Additionally, it is undisputed that North River had a significant amount of time in which to investigate Keystone's role in the explosion if it had chosen to do so. A material issue of fact remains whether Keystone's alleged failure to provide adequate information about claims and settlements inhibited North River's ability to evaluate or potentially to defend claims against Keystone.

Similarly, even assuming Keystone engaged in collusive conduct with O&G, it is undisputed that Keystone's underlying insurers had discretion to settle claims against Keystone without Keystone's consent. Doc. #394 at 146 (primary policy); Doc. #394-1 at 17 (first layer excess insurer follow-form policy); Doc. #401-1 at 6-7 (North River adjuster acknowledging underlying carriers' discretion to settle). Additionally, there is substantial evidence in the record that the underlying insurers engaged in independent investigation and evaluation of claims against Keystone and concluded that the claims were meritorious and covered under their

policies. Doc. #401-3 (primary insurer testimony); Doc. #401-8 at 4-8 (first layer excess insurer testimony). Because there is a genuine issue of fact about whether the underlying insurers made independent decisions that resulted in the exhaustion of their policies, North River has not shown as a matter of law that Keystone's alleged collusive conduct caused it any harm.

In addition, North River has not shown that Keystone's stipulation to liability prejudiced North River, because it has not demonstrated that absent the stipulation Keystone would not have been found liable for similar damages. Indeed, because there is ample evidence in the record indicating Keystone's responsibility, it is possible that Keystone would have been found liable for the same or higher damages than that stipulated to in the settlement. Because North River has failed to show an absence of a genuine issue of fact that any of Keystone's instances of non-cooperation resulted in prejudice to North River, I will deny its motion for summary judgment on Count One.

### Count Two – Breach of Consent-to-Settle Clause

North River's insurance contract with Keystone includes condition G.4 that states: "YOU shall not make or authorize an admission of liability, attempt to settle, incur any expense, make any payment other than for first aid, or otherwise dispose of any claim or suit without OUR written consent." Doc. #394-1 at 46. North River alleges that Keystone violated this condition by entering into multiple settlements, including settlements with its two underlying insurers, two direct settlements with O&G, and an agreement to arbitrate rather than litigate Intervenors' claims. As North River acknowledged during the hearing on its motion, North River must demonstrate that prejudice resulted from Keystone's violation of its consent-to-settle clause. *See, e.g.*, *Hartford Roman Catholic Diocesan, Corp. v. Interstate Fire & Cas. Co.*, 199 F. Supp. 3d 559, 582 (D. Conn. 2016) ("Connecticut law requires that an insurer seeking to rescind a policy

demonstrate that it was materially prejudiced by any failure to perform on the insured's part.").

Although one Connecticut trial court has found prejudice as a matter of law for a violation of a

"no voluntary payments" clause in an insurance contract, that case is inapposite. *See*

*MacDermid, Inc. v. Travelers Indem. Co.*, 2017 WL 2622646 (Conn. Super. Ct. 2017). The

court's decision in that case relied heavily on the fact that the insured did not provide notice to

the insurer of claims against it until after the claims had already been settled. *Id.* at *9 (holding

that the insurer "satisfied its burden of showing" prejudice where the insured "failed to provide

notice to [the insurer] until well after the claim . . . had been identified, negotiated, and resolved,

leaving [the insurer] with 'nothing to do but issue a check.'") Here, by contrast, it is undisputed

that Keystone immediately notified the North River of the explosion and of the claims filed

against it by various claimants.

Assuming for the purposes of this ruling that Keystone's participation in the various

settlements violated the consent-to-settle clause, North River has failed to show that there is no

dispute of material fact whether it was prejudiced by any of these settlements. As noted above,

the underlying insurers had discretion to settle claims without Keystone's consent. Therefore,

North River cannot show that Keystone's consent to these settlements necessarily prejudiced

North River, since the insurers may have settled anyway.

Similarly, North River has not shown beyond dispute that it was prejudiced by

Keystone's settlements with O&G. Genuine fact issues remain whether there would have been

liability for similar or even higher damages.

Finally, North River has not shown that Keystone's agreement to arbitrate rather than

litigate claims with Intervenors resulted in prejudice to North River. Given the evidence of

record indicating Keystone's liability for the explosion and the enormity of Intervenors' losses,

genuine fact issues remain whether litigation of these claims would have resulted in a higher

award for Intervenors than that granted by the arbitrator. Because North River has failed to show

that any violation by Keystone of the consent-to-settle clause resulted in prejudice to North

River, I will deny North River's motion for summary judgment on Count Two.

### Count Four - Breach of the Implied Covenant of Good Faith and Fair Dealing

North River rests its claim that Keystone violated its implied covenant of good faith and

fair dealing on the same factual bases as its first two claims. Under Connecticut law, "[a]n action

for breach of the covenant of good faith and fair dealing requires proof of three

essential elements: first, that the plaintiff and the defendant were parties to a contract under

which the plaintiff reasonably expected to receive certain benefits; second, that the defendant

engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and

third, that when committing the acts by which it injured the plaintiff's right to receive benefits he

reasonably expected to receive under the contract, the defendant was acting in bad faith."

*Fracasse v. People's United Bank*, 747 F.3d 141, 143 n.1 (2d Cir. 2014) (quoting *Franco v. Yale*

*Univ.*, 238 F. Supp. 2d 449, 455 (D. Conn. 2002)). For the same reasons discussed above, North

River has failed to show lack of a genuine fact issue whether it was injured by Keystone's

conduct, much less whether Keystone acted in bad faith given the context of its liability exposure

and the claims it faced. Therefore, I will deny North River's motion for summary judgment on

Count Four.

### Intervenors' Counterclaims

North River's motion for summary judgment does not specifically address Intervenors'

counterclaims. For that reason alone and despite North River's belated arguments advanced in its

7

reply briefing, I will deny North River's motion as to the counterclaims. *See, e.g.*, *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999).

Moreover, the reasons discussed above as to North River's claims against Keystone likewise establish the existence of genuine fact issues for each of the counterclaims. For example, Counterclaims One, Two, and Three allege that North River breached its contract, while also acting in bad faith or negligently in its dealings with Keystone. To the extent that genuine issues of fact remain concerning whether North River was actually prejudiced by any of its claimed breaches of the insurance policy by Keystone, the resolution of the same issues correlates with whether North River itself breached its obligations and did so in bad faith or negligently. Likewise, a genuine issue of fact remains whether North River's own conduct was grievous enough to amount to unfair trade practices under both Massachusetts and Connecticut law as alleged in Counterclaims Four and Five. Therefore, I will deny North River's motion for summary judgment as to the Intervenors' counterclaims.

### CONCLUSION

For the reasons set forth above, the Court DENIES North River's motion for summary judgment (Doc. #391) in all respects.

It is so ordered.

Dated at New Haven this 5th day of December 2017.

/s/ *Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge